POLAROID CORPORATION *vs.* THE TRAVELERS INDEMNITY COMPANY & others.[1]

Middlesex. December 8, 1992. - April 7, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Insurance*, General liability insurance, Pollution exclusion clause, Defense of proceedings against insured, Construction of policy, Unfair act or practice. *Consumer Protection Act*, Insurance, Unfair act or practice. *Laches. Contract*, Insurance, Reformation, Construction of contract. *Damages*, Breach of contract. *Practice, Civil*, Summary judgment. *Harzardous Materials. Words*, "Sudden and accidental."

In an action by a corporate insured against its comprehensive general liability insurers, seeking recovery of costs it incurred in the defense and settlement of claims against it arising from discharges of pollutants, the summary judgment record established that the discharges were not "sudden and accidental," with the consequence that the pollution exclusion clauses of the various policies eliminated coverage of the claims in question. [751-753]

Refusal by liability insurers to defend claims against their corporate insured, even though ultimately determined to be in violation of certain provisions of G. L. c. 176D, § 3 (9), did not support the insured's claim under G. L. c. 93A, § 11, in the absence of a showing that the alleged wrongful conduct was an "unfair or deceptive act[ ] or practice[ ]" prohibited by c. 93A, § 2. [753-755]

In a civil action, the summary judgment record established fully, clearly, and decisively the undisputed facts on which an insurer was entitled, on

---

[1] In addition to Travelers Indemnity Co. (Travelers), Polaroid's primary comprehensive general liability insurance carrier from January 1, 1971, to January 1, 1978, the defendants are: (a) Fireman's Fund Insurance Company (Fireman's Fund), Polaroid's primary general liability carrier from January 1, 1978, to November 1, 1980, and also an umbrella and excess insurer, and Commercial Union Insurance Company, Polaroid's primary general liability carrier from November 1, 1980, to January 1, 1985; (b) Polaroid's umbrella general liability insurance carriers, American Home Assurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, First State Insurance Company, and Royal Indemnity Company; (c) and Insurance Company of North America which provided excess coverage to Polaroid.

the basis of mutual mistake, to reformation of four policies of umbrella liability insurance from which the pollution exclusion clauses had been omitted inadvertently. [755-760]

In an action by a corporate insured against its general liability insurers arising from breach of their contractual duty to defend certain claims, this court, applying the normal and customary principles for measuring damages for breach of contract, concluded that the insurers, notwithstanding their breach of the duty to defend, were not liable for the amount the insured paid in settlement of the claims, where, as the insurers carried their burden in summary judgment proceedings of showing that the claims were not within the coverage of the policies in question, the settlement costs could not have been incurred as a result of the breach. [760-766]

CIVIL ACTION commenced in the Superior Court Department on August 26, 1988.

Motions for summary judgment were heard by *Elizabeth B. Donovan*, J., and *Wendie I. Gershengorn*, J. Entry of final judgment was ordered by *Charles J. Hely*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*James E. McGuire* for the plaintiff.

*John A. Nadas* (*Mark D. Cahill* with him) for The Travelers Indemnity Company.

*Sheldon Karasik* of New York (*Marc LaCasse* with him) for American Home Assurance Company & others.

*Peter G. Hermes* (*Molly H. Sherden* with him) for Commercial Union Insurance Company.

*Gary D. Centola* of New York (*Lisa D. Campolo* with him) for Fireman's Fund Insurance Company.

*Paul R. Koepff* & *Rosemary B. Boller* of New York, & *David B. Chaffin*, for Insurance Company of North America, submitted a brief.

The following submitted briefs for amici curiae:

*Barry L. Malter, Peri N. Mahaley* & *Warren Anthony Fitch*, of the District of Columbia, & *Walter H. Mayo, III*, for Emhart Corporation & another.

*Rosanna Sattler, Jeffrey W. Armstrong* & *Valerie C. Samuels* for Insurance Environmental Litigation Associ-

ation.

*James L. Ackerman & Carol F. Liebman* for Aetna Casualty & Surety Company.

*David M. Jones, John M. Edwards & M. Katherine Willard* for Bose Corporation & others.

*Ralph T. Lepore, III,* for Liberty Mutual Insurance Company.

WILKINS, J. Polaroid Corporation brought this action against its comprehensive general liability insurers seeking recovery of defense and settlement costs that Polaroid incurred in the defense and settlement of claims against it arising from the discharge of pollutants by Cannons Engineering Corporation (Cannons), Polaroid's former waste processor. Claims against Polaroid were asserted in 1986 by the Massachusetts Department of Environmental Quality Engineering, the New Hampshire Environmental Protection Bureau, and the United States Environmental Protection Agency (EPA) (under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq. [1988] [CERCLA]), with respect to sites operated by Cannons in Bridgewater and Plymouth, Massachusetts, and in Nashua and Londonderry, New Hampshire.[2] Polaroid's general liability carriers declined to defend or to indemnify Polaroid for the Cannons claims. In response to the Cannons claims, Polaroid and others agreed to undertake certain removal actions, and on July 6, 1988, Polaroid entered into a partial consent decree with the EPA.[3] On August 26, 1988, Polaroid commenced this action. Polaroid asserted that its insurers had a duty to defend and to indemnify it as to the Cannons claims and that the carriers' conduct violated G. L. c. 93A (1990 ed.) and G. L. c. 176D (1990 ed.).

Numerous questions of law were considered in the Superior Court on motions for partial summary judgment. Ulti-

---

[2]We shall refer to the locations as the Cannons sites and to the claims as the Cannons claims.

[3]The settlement in which Polaroid joined was unsuccessfully challenged in *United States* v. *Cannons Eng'g Corp.*, 720 F. Supp. 1027 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990).

mately, in April, 1992, a final judgment was entered declaring that Polaroid's primary carriers had a duty to defend Polaroid with respect to the Cannons claims.[4] That obligation to defend was limited to the period prior to September 28, 1990, the date on which a partial summary judgment had been allowed, in favor of the insurers, determining that the insurers had no duty to indemnify Polaroid with respect to any aspect of the Cannons claims. The final judgment declared that Polaroid's primary insurers had no additional obligation to Polaroid concerning the Cannons claims; that there was no violation of G. L. c. 93A and G. L. c. 176D; and that none of Polaroid's umbrella and excess insurers had any duty to indemnify it with respect to the Cannons claims. That final judgment, pursuant to an earlier partial summary judgment, also allowed Lexington Insurance Company to reform four policies that it had issued to Polaroid so as "to contain 'sudden and accidental' pollution exclusions." We granted an application for direct appellate review of Polaroid's appeal.

Polaroid appeals asserting that the final judgment is in error. It claims that (1) the determination that its insurers have no duty to indemnify Polaroid is based on an erroneous interpretation of the pollution exclusion and on an erroneous interpretation of the summary judgment record; (2) the dismissal of its G. L. c. 93A and G. L. c. 176D claims was error; (3) the Lexington Insurance Company policies should not have been reformed to include pollution exclusions; and (4) the insurers who had a duty to defend the Cannons claims and violated that duty are liable for Polaroid's settlement costs even if the Cannons claims are not within the coverage of the policies issued to Polaroid. Additional facts bearing on the various issues will be presented where appropriate. We affirm the judgment.

1. *The pollution exclusion.* Polaroid challenges the summary judgment determination that property damage caused

---

[4]Except that Travelers had no such duty as to the New Hampshire sites. No appeal has been taken as to this aspect of the final judgment.

by the releases at the Cannons sites is not covered under the various comprehensive general liability policies. That determination was based on the language of the pollution exclusion which, with one exception, eliminates coverage of claims for "property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse, or body of water." The one exception provides that the "exclusion does not apply if any such discharge, dispersal, release or escape is sudden and accidental."

This court considered the "sudden and accidental" language in the pollution exclusion in *Goodman* v. *Aetna Casualty & Sur. Co.*, 412 Mass. 807 (1992); *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.*, 412 Mass. 330 (1992); *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc.*, 407 Mass. 675 (1990); and *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.*, 407 Mass. 689 (1990). We adhere to what we said in those cases. Polaroid argues that, on the summary judgment record, there is a dispute of material fact on the question whether the discharges at the Cannons sites were sudden and accidental. We disagree.

The record establishes that the releases of pollutants were not sudden and accidental. The motion judge who passed on the coverage question stated that "Polaroid has conceded that the release of the toxic chemicals by Cannons was not sudden and accidental." Nowhere in its discussion of this issue in its brief and in its reply brief does Polaroid deny the accuracy of the judge's statement.[5] Moreover, the uncontroverted affidavit of an hydrogeologist, based on his review of numerous reports, evaluations, and other data, states that at each of the Cannons sites "the discharge of pollutants into the environment happened gradually, over a lengthy period

---

[5]In its reply brief, Polaroid states it made "the so-called concession" in oral argument in order "to illustrate that point of view is critical in determining 'sudden and accidental.'"

of time." He added that he found "no evidence of a sudden (abrupt) discharge of pollutants at any of the four sites."[6]

Polaroid argues that, in determining whether a discharge of a pollutant was sudden and accidental within the meaning of those words in the pollution exclusion, the perspective of the insured is controlling. Polaroid did not intend the discharge of pollutants, and we may assume, without deciding, that from its point of view those discharges were sudden and accidental. The question for us is whether there is any dispute of material fact on the question whether the discharges were sudden and accidental. If a discharge was intentional or not sudden, the pollution exclusion denies coverage. The policy language does not call for the assessment of "accidental" or "sudden" from the insured's perspective. Policy language does, however, define an "occurrence" by referring to "property damage neither expected nor intended *from the standpoint of the insured*" (emphasis supplied). The distinctive absence from the pollution exclusion of the words "from the standpoint of the insured" is significant for our purposes. See *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc., supra* at 679. If a third person who discharged a pollutant did so intentionally, the pollution exclusion denies coverage, even to an innocent insured, for any resulting property damage. The point of view of the insured is immaterial. See *A. Johnson & Co.* v. *Aetna Casualty & Sur. Co.*, 933 F.2d 66, 74 (1st Cir. 1991) (Maine law); *Powers Chemco, Inc.* v. *Federal Ins. Co.*, 74 N.Y.2d 910, 911 (1989). On the summary

---

[6]The expert made specific statements about each of the four locations. At the Bridgewater site, the discharge of pollutants was "gradual, routine and systematic." At Plymouth there were routine leaks from storage tanks and the distribution of contaminants in the soil was indicative of minor, gradual and routine releases. At the Nashua, New Hampshire, site, an unlicensed and illegal hazardous waste landfill, liquid hazardous wastes were dumped continuously for many years in bulk and in drums, while hazardous sludge was routinely and intentionally deposited over a period of years. At the Londonderry, New Hampshire, location, also an unlicensed and illegal hazardous waste site, hazardous waste was illegally and intentionally dumped from tanker trucks.

judgment record, the discharges were not sudden and accidental.[7]

2. *General Laws c. 93A and c. 176D.* We reject Polaroid's challenge to the dismissal of its claims against its primary carriers under G. L. c. 93A and G. L. c. 176D. The claims are based on the primary insurers' refusals promptly to defend Polaroid against the Cannons claims.

In its August, 1988, complaint, Polaroid alleged that each of its comprehensive general liability insurers had a duty to defend it with respect to the Cannons claims. Insurers, in declining to defend the claims, raised various contentions, including arguments that (1) the obligation to defend applied to suits, and no suit had been commenced against Polaroid; (2) the discharges of pollutants were not "sudden and accidental" and hence not covered; and (3) clean-up costs were not "damages" and thus they were not covered losses under the policies. Following this court's June, 1990, opinion in *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.,* 407 Mass. 689 (1990), in which certain issues concerning pollution claims were concluded against insurers, the defendant primary insurers (who, under the rules established in the *Hazen* case, had a duty to defend the Cannons claims) agreed to

---

[7]Because there is no dispute of material fact concerning the nature of the discharges and because we consider the question on summary judgment, we need not decide whether the insurer or the insured has the burden of proof on the question of the sudden and accidental nature of any discharge.

We decline to consider the argument that insurers intended that the pollution exclusion not apply to insureds who were not at fault for the pollution. Even if we were to assume that the drafting and regulatory history of a policy provision could be instructive in resolving an ambiguity concerning the meaning of the provision (see *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc.,* 407 Mass. 675, 682-683 [1990]), here there is no ambiguity. "Because the word 'sudden' in the pollution exclusion clause is not ambiguous, we have no need to consider the drafting history of that clause or any statements made by insurance company representatives concerning the intention of its drafters." *Id.* at 682. The same is true as to the word "accidental." Accordingly, we do not consider information involving the drafting history and other matters involving the pollution exclusion. To clear the record before the court, we strike briefs submitted as amici curiae offered solely on this issue.

reimburse Polaroid for its defense costs and did so. On September 28, 1990, a motion judge concluded that, because of the pollution exclusion, there was no coverage of the Cannons claims, thereby terminating any further duty to defend those claims.

When the Cannons claims were first advanced against Polaroid, an insurer could reasonably have concluded that no aspect of the Cannons claims was within the scope of its coverage and that, therefore, there was no duty to defend Polaroid. See *Hazen Paper Co.* v. *United States Fidelity & Guar. Co., supra* at 693-694, 700 (close question whether letter from EPA is "suit" requiring defense; deciding that environmental clean-up costs are "damages," following majority rule). In such circumstances, an insurer's refusal to defend, even if ultimately determined to be wrong, does not support a claim under G. L. c. 93A. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.,* 406 Mass. 7, 14-15 (1989).[8]

Polaroid's claim that G. L. c. 93A, § 11, was violated by its primary insurers' violations of certain provisions of G. L. c. 176D, § 3 (9), is of significance only to the extent that the alleged wrongful conduct was a violation of G. L. c. 93A, § 2 ("unfair or deceptive acts or practices"). A consumer asserting a claim under G. L. c. 93A, § 9, may recover for violations of G. L. c. 176D, § 3 (9), without regard to whether the violation was unlawful under G. L. c. 93A, § 2, because of the explicit statement to that effect in § 9. Polaroid, however, asserts rights under G. L. c. 93A, § 11, as one engaged in trade or commerce, and § 11 does not grant an independent right to recover for violations of G. L. c. 176D, § 3 (9). See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.,* 404 Mass. 706, 717 n.11 (1989).

---

[8]Because Polaroid moved for summary judgment on its G. L. c. 93A claims before the *Hazen* opinion was released, and did not thereafter raise any question concerning post-*Hazen* G. L. c. 93A violations, we need not consider whether the primary carriers violated G. L. c. 93A by their post-*Hazen* conduct.

Polaroid makes no attempt in its brief to demonstrate, insurer by insurer, that by one or more unfair acts or practices an insurer caused Polaroid a loss of money or property, beyond its assertions that insurers refused to defend the Cannons claims (a point we have disposed of). Polaroid's senior corporate counsel testified on deposition that all three primary insurers gave specific detailed reasons with respect to their denial of coverage. Any particular omission of a primary insurer in the handling and investigation of the Cannons claims caused no loss to Polaroid because the insurers ultimately assumed Polaroid's defense costs.

3. *Reformation of insurance policies.* Polaroid argues that summary judgment should not have been granted in favor of Lexington Insurance Company (Lexington) on Lexington's counterclaim that sought, on the basis of mutual mistake, to reform four Lexington umbrella coverage policies issued to Polaroid. The judgment directed that each policy was reformed to include a pollution exclusion identical to the pollution exclusion that we have discussed in the first numbered section of this opinion.[9]

Before November, 1979, Polaroid had a series of yearly umbrella policies issued by National Union Fire Insurance Co., each of which contained a pollution exclusion. In November, 1979, Polaroid turned to Lexington for umbrella coverage, and between November, 1979, and April, 1983, Lexington issued four umbrella policies to Polaroid, none of which contained a pollution exclusion. In April, 1983, Polaroid canceled the fourth of the Lexington umbrella policies

---

[9]Fireman's Fund, American International Underwriters Insurance Co. (AIU), and Central National Insurance Co. of Omaha (Central National) also were successful on motions for summary judgment for reformation on the same basis. These companies had issued excess insurance policies "following form" to one or more of the Lexington policies at issue and, therefore, each excess policy also lacked the pollution exclusion claimed to have been omitted from the Lexington policies by mistake. We shall discuss the insurers' arguments by reference to Lexington alone. AIU and Central National, not parties to this action, are parties in a companion case to which the order reforming Lexington's Polaroid policies also applied.

and obtained umbrella coverage from Royal Indemnity Company. That successor policy did have a pollution exclusion.

If the language of a written instrument does not reflect the true intent of both parties, the mutual mistake is reformable. *Mickelson* v. *Barnet*, 390 Mass. 786, 791 (1984). *Fireman's Fund Ins. Co.* v. *Shapiro*, 286 Mass. 577, 582 (1934). The mistake must either be mutual (*Mickelson* v. *Barnet, supra*) or be made by one party and known to the other party (see *Century Plastic Corp.* v. *Tupper Corp.*, 333 Mass. 531, 535 [1956]; *Torrao* v. *Cox*, 26 Mass. App. Ct. 247, 250 [1988]). To be entitled to reformation, a party must present full, clear, and decisive proof of mistake. See *Mickelson* v. *Barnet, supra* at 792, and cases cited. The parol evidence rule does not bar extrinsic proof of intent in these circumstances. *Id.* Insurance policies may be reformed on the same principles. See *Mates* v. *Penn Mut. Life Ins. Co.*, 316 Mass. 303, 306 (1944); *Fireman's Fund Ins. Co.* v. *Shapiro, supra.*

In order to prevail on its motion for summary judgment, Lexington had the burden of establishing that there was no dispute of material fact on all the relevant issues, particularly concerning Polaroid's intent and Lexington's intent as to the inclusion of a pollution exclusion in the policies. *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). Moreover, as we have said, Lexington had to establish that the undisputed material facts fully, clearly, and decisively showed a mutual mistake. In our discussion, we are concerned with whether there was an adequate showing of no dispute of material fact concerning a mistake shared by both parties as to the inclusion of a pollution exclusion in the four policies. *Century Plastic Corp.* v. *Tupper Corp., supra* at 534.

There was clear and decisive evidence that Polaroid believed that its umbrella policies from Lexington included a pollution exclusion. The record presents no dispute of material fact as to that evidence. In Polaroid's application to Lexington for umbrella coverage, made through its broker in November, 1979, certain desired extensions of coverage beyond Polaroid's then current coverage were listed. Greater

coverage for losses caused by pollution was not listed.[10] In October, 1979, just before the Lexington policy was issued, Polaroid's broker sought excess coverage, above Lexington's upcoming umbrella coverage, and wrote to a prospective insurer that the terms and conditions of Lexington's coverage were the same as those of Polaroid's then current umbrella insurer (with an exception not relevant here). There was uncontroverted evidence from a person involved in underwriting the Polaroid account that Polaroid did not request or discuss broadening its coverage under the Lexington umbrella policy beyond that already provided to Polaroid by its umbrella insurer. Finally, as further indication of Polaroid's understanding of the coverage provided by its Lexington umbrella policies, there was uncontroverted evidence, by document and deposition, that Polaroid was advised by its broker and its director of risk management to consider broader pollution coverage because the current (1982) coverage (including Lexington's) contained pollution exclusion clauses. The fact that in 1986 Polaroid knew that the Lexington policies did not have pollution exclusions does nothing to controvert the evidence of its contrary understanding when the Lexington policies were issued. Polaroid has presented no evidence to put in issue the facts showing that Polaroid believed and understood, when the Lexington policies were issued, that the Lexington policies were intended to include a pollution exclusion.[11]

Lexington's intention to include a pollution exclusion endorsement on each Polaroid policy is demonstrated by uncontested facts. The vice president of Lexington's casualty underwriting department during the period when the policies in

[10]As we have said, Polaroid's umbrella coverage immediately prior to Lexington's coverage had a pollution exclusion.

[11]The successor umbrella insurer to Lexington, Royal Indemnity Company, issued to Polaroid a policy with a pollution exclusion at the same annual premium rate that Lexington had last charged. It is doubtful, all other things being equal, that Polaroid would have canceled its coverage with Lexington to take the Royal Indemnity Company coverage at the same premium rate if Polaroid had believed that the Lexington policy contained no pollution exclusion.

question were issued to Polaroid indicated that Lexington has intended to incorporate a pollution exclusion in all liability insurance policies issued since 1975; that all underwriters were instructed to make certain that all umbrella policies contained a pollution exclusion endorsement; and that Lexington intended that all such policies contain, at minimum, an endorsement that included a "sudden and accidental" pollution exclusion. A former assistant vice president of Lexington, who had served as manager of its umbrella and excess underwriting department from 1979 to 1981, indicated he was not aware of any liability policy issued to any Lexington insured, during the time relevant to this case, that did not contain a pollution exclusion.[12]

Polaroid does not directly contradict this evidence of Lexington's general intention. It relies rather on the inference that it says should be drawn from the presence of different endorsements and from changes in the four policies issued to

---

[12]We give little weight to other documentary material, presented to show Lexington's intention to include a pollution exclusion endorsement, indicating what Lexington instructed its personnel to do on dates after most or all the Polaroid policies had been issued. On the other hand, Polaroid is in error in saying that these documents must be irrelevant because they were not addressed to Polaroid.

We reject Lexington's argument that the premiums that it charged to Polaroid show conclusively that Lexington intended to include a pollution exclusion in its Polaroid umbrella policies. For the same coverage that Lexington asserts that it provided, National Union Fire Insurance Company had charged premiums to Polaroid from January, 1978, through November 1, 1979, at an annual rate of $95,000. Lexington issued its first umbrella policy to Polaroid at an annual rate of $85,000. Lexington claims that, if it had intended to issue a policy without a pollution exclusion, its annual premium would have been higher than it was. Although these facts are relevant on the issue of Lexington's intent, they do not establish that intent uncontrovertibly on this record. There was evidence that the market in umbrella insurance was "soft" during the relevant times. In fact, the annual premiums that Lexington charged to Polaroid for the same dollar amount of umbrella coverage decreased for each successive policy ($79,500, to $54,500, to $43,600). There is, therefore, a factual dispute as to whether the annual premium charges demonstrate Lexington's intention to provide coverage that included a pollution exclusion.

it.[13] The argument is that we should draw the inference that Lexington would not have made the changes that it did without also adding a pollution exclusion endorsement if Lexington had really intended that there be a pollution exclusion in the policies. In other words, Polaroid relies on the fact of the repetition of the alleged mistake to argue that one must infer that there was no mistake. Such an inference is not warranted as a basis for concluding that there is a dispute of material fact as to Lexington's intention. Without any other supporting evidence, it would be unreasonable to draw an inference of Lexington's intention to omit the pollution exclusion in the face of the uncontroverted statements of company policy to include a pollution exclusion endorsement in each umbrella policy issued during the relevant period.[14] The absence of the pollution exclusion from the policies does not raise a genuine issue of material fact concerning Lexington's intention. See *Federal Deposit Ins. Corp. v. Csongor*, 391 Mass. 737, 742-743 (1984).

Polaroid briefly argues that Lexington should be barred by laches from making its mutual mistake argument. Polaroid raised laches as an affirmative defense to Lexington's counterclaim for reformation, but laches is not discussed in the motion judge's decision on reformation. The equitable defense of laches will bar a party from asserting a claim if the

---

[13]The 1980-1982 policy differed from its predecessor by eliminating a leased property endorsement and by adding excess coverage for workers' compensation and for nonownership watercraft liability. The 1982-1983 policy dropped exclusions for pension trust liability and certain pharmaceutical claims, as well as certain personal injury "following form" liability; added new endorsements amending the cancellation period and making the policy "no less broad" than underlying coverage; and amended the notice of accident provision. The 1983 policy eliminated a punitive damages amendatory endorsement that appeared in the three previous policies.

[14]There has been extensive discovery in this case. The record appendix has 3,915 pages. When, by late-filed counterclaim in August, 1990, Lexington asserted that its policies should be reformed to include a pollution exclusion, Polaroid did not seek additional time for discovery before action on Lexington's counterclaim. A review of Lexington's files to see whether it omitted a pollution exclusion endorsement from a number of policies issued during the relevant period might have been instructive.

party so unreasonably delayed in bringing the claim that it caused some injury or prejudice to the defendant. See *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 707 (1979). Polaroid was given time to respond to Lexington's motion for summary judgment on the reformation issue. On this summary judgment record it appears that Polaroid was not prejudiced by Lexington's delay because no material fact is in dispute on this issue. Lexington is not barred by laches from seeking reformation.

4. *Consequences of the breach of a duty to defend.* Polaroid argues, as an entirely independent ground for its insurers' liability to pay its settlement costs, that, if an insurer in breach of its obligation to defend a claim declines to defend that claim, the insurer must pay the amount of any reasonable settlement that the insured makes, without regard to whether the claim was one for which coverage was provided.[15]

We consider the issue in the circumstances of this case where the insurers have demonstrated conclusively that the Cannons claims were not covered under the policies issued to Polaroid. We conclude that, in this case, no insurer is liable for the amount that Polaroid paid in settlement of the Cannons claims.

Polaroid finds support for its position in *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 325-326 (1991) (*Camp Dresser*).[16] The *Camp Dresser* opinion notes a division of authority around the country (*id.* at 326

---

[15]This issue was raised below at best in generalities that never were made specific. Neither motion judge considered the point nor was she asked to. This fully briefed issue is of importance beyond this case, as the number of amicus curiae briefs discussing it indicates. In fact, the most comprehensive and instructive argument on behalf of Polaroid's position on this issue is made in the Emhart Corporation brief filed as amicus curiae. No material factual dispute, not raised below, bears on our resolution of this issue. We think it appropriate to discuss the question.

[16]The defendant insurer, Home Insurance Company, filed an application for further appellate review in that case (FAR-5694), but the parties settled the case before this court acted on the application. The application for further appellate review particularly focused on this issue.

n.6 & n.7) and concluded that this court's opinion in *Berke Moore Co. v. Lumbermens Mut. Casualty Co.*, 345 Mass. 66, 70-71 (1962) (*Berke Moore*), supported the view that an insurer improperly declining defense of a claim is "liable for the reasonable costs of both defense and settlement." *Camp Dresser, supra* at 326.

No opinion of this court has passed on this issue. The *Berke Moore* opinion does not provide the support that the *Camp Dresser* opinion attributes to it.[17] The *Berke Moore* opinion holds that, if an insured settles a claim that its insurer improperly declined to defend, the insurer may not avoid liability by reliance on a policy provision that limits its obligation to paying either the amount of a final judgment or the amount of a settlement consented to by it. *Berke Moore, supra* at 71-72. Certainly, the *Berke Moore* case does not hold that an insurer that improperly declines to defend a claim is liable automatically for the amount of any settlement reached. The case was remanded for a determination of the reasonableness of the settlement. *Id.* at 73. That opinion does not concern an insurer's right to argue that the underlying claim that its insured settled was not in fact covered in any respect under the insurance policy. Indeed, the issue with which we are concerned was not raised in the *Berke Moore* case.[18]

---

[17]Other opinions of this court cited in the *Camp Dresser* opinion after the citation to the *Berke Moore* opinion (*Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 326 [1991]) do not deal with the issue before us.

[18]We have considered the trial judge's findings and rulings, Berke Moore's request for rulings, and the briefs in that case. The insurer made no claim that, if Berke Moore was liable in the underlying action, the loss did not fall within the coverage of the policy. We obtain no guidance in resolving the issue before us from the court's comment that, if the trial judge intended to rule that the underlying plaintiff's claim against Berke Moore was not within the policy coverage, the question would have to be answered in a trial. *Berke Moore Co.* v. *Lumbermens Mut. Casualty Co.*, 345 Mass. 66, 72 (1962). The opinion does not say that the question could not have been raised in the trial of the *Berke Moore* case. We know, in any event, that the insurer did not raise it.

Polaroid presents its argument in terms of its right to damages arising from its insurers' breaches of their contractual duties to defend the Cannons claims. Polaroid rightly does not argue that it is automatically entitled to indemnity under various policies because of the breach of the duty to defend.[19] A failure to defend does not bar an insurer from contesting its indemnity obligation. We are concerned, therefore, not with a claim for automatic indemnity because of a breach of a duty to defend but rather with a claim for contract damages because of such a breach. Certainly the insurers are liable in contract to Polaroid for its defense costs (up to the time that it was determined that the Cannons claims were not covered by the various policies). The insurers agree, and that point is not in issue.

The question is whether contract damages should include the amounts Polaroid paid in settlement of the Cannons claims. Contract damages are "those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties." *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 680 (1985). Polaroid makes no claim that it was forced to settle the Cannons claims because its insurers had declined to defend those claims.

Our appropriate focus is on the question whether, in some way, the amounts paid in settlement arose naturally from the breach so as to be recoverable as contract damages. We align ourselves with those authorities that treat an insurer's unjustified refusal to defend as a breach of contract and seek then to determine what is recoverable as contract damages. If an underlying claim (such as the Cannons claims) is not within the coverage of an insurance policy, an insurer's improper failure to defend that claim would not ordinarily be a cause of any payment that the insured made in settlement of that

---

[19]An obligation to indemnify does not automatically follow from the existence of a duty to defend. See *Newell-Blais Post No. 443, Veterans of Foreign Wars of the U.S., Inc.* v. *Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986); *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 681-682 (1964).

claim (or to satisfy a judgment based on that claim).[20] See *Afcan* v. *Mutual Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 647 (Alaska 1979); *Hirst* v. *St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 798-799 (Ct. App. 1984); *Fireman's Fund Ins. Co.* v. *Rairigh*, 59 Md. App. 305, 316-320 (1984); *St. Paul Ins. Co.* v. *Bischoff*, 150 Mich. App. 609, 612-613 (1986); *Servidone Constr. Corp.* v. *Security Ins. Co.*, 64 N.Y.2d 419, 423-424 (1985); *Timberline Equip. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 281 Or. 639, 646 (1978); R. Keeton & A. Widiss, Insurance Law § 9.5(b)(1)(i), at 1046 (1988) ("the insurer is liable for any good faith settlement within the policy limits — subject, of course, to the insurer's right to an adjudication that the coverage applied to the loss"); A. Windt, Insurance Claims and Disputes § 4.35, at 213 (1988) ("When a contract is breached, the injured party is entitled to receive what would have been obtained if there had been no breach; the injured party is not entitled to receive more"). Contra, e.g., *Wint* v. *Fidelity & Casualty Co. of N.Y.*, 9 Cal. 3d 257, 261 (1973); *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Sur. Co.*, 155 Conn. 104, 113-114 (1967); *Clemmons* v. *Travelers Ins. Co.*, 88 Ill. 2d 469, 479 (1981); *Nixon* v. *Liberty Mut. Ins. Co.*, 255 N.C. 106, 112-113 (1961); *Conanicut Marine Servs., Inc.* v. *Insurance Co. of N. Am.*, 511 A.2d 967, 971 (R.I. 1986).

When an insurer's good faith refusal to defend an insured is ruled to have been unjustified, there is no reason not to apply normal contract damages principles. See *Ficara* v. *Belleau*, 331 Mass. 80, 82-83 (1954). Even when an insurer's conduct is unfair or deceptive in violation of G. L. c. 93A, the insured must prove that the insurer's conduct was the cause of any loss it sustained. See *International Fidelity Ins.*

---

[20]If an underlying case went to judgment, the insurer would be bound by the result of the trial, as to all material matters decided in that action that bear on the coverage issue. *Miller* v. *United States Fidelity & Guar. Co.*, 291 Mass. 445, 448-449 (1935). See *Magoun* v. *Liberty Mut. Ins. Co.*, *supra* at 681-682. When the underlying claim is settled, the circumstances of the underlying claim are not aired in an adversary proceeding, and, therefore, a different approach may be required.

*Co.* v. *Wilson*, 387 Mass. 841, 850 (1983). Courts that have not applied these principles have not explained in any detail why they have chosen to abandon contract damage principles and thereby award the amount of any reasonable settlement (at least up to policy limits) as damages. The statement made by some courts that the insurer is estopped to deny liability is simply a conclusion and fails to recognize that no estoppel is involved in any traditional sense because, in refusing to defend a claim, an insurer makes no misrepresentation on which the insured relies to its detriment. See *Merrimack Mut. Fire Ins. Co.* v. *Nonaka*, *ante* 187, 189 (1993).

Because an insurer should be liable for the natural consequences of a breach of contract that places its insured in a worse position, an obligation to pay settlement costs could result from a breach of the duty to defend. For example, if an insured lacks financial resources sufficient to maintain a proper defense, an insured's losses in the underlying claim could well be the result of a breach of the duty to defend. Also, delay in determining an insurer's defense obligation and delay in the settlement of the claim could make it more difficult for an insured to prove that the underlying claim that it settled fell within policy coverage.[21] We, therefore, agree with the Court of Appeals of New York that an insurer that wrongfully declines to defend a claim will have the burden of proving that the claim was not within its policy's coverage. *Servidone Constr. Corp.* v. *Security Ins. Co.*, *supra* at 425.[22] In this case, the record demonstrates, as we indi-

---

[21]Certainly an insured should not be disadvantaged in relation to its defense-defaulting insurer because the underlying claim was settled for a reasonable amount. This is particularly true as to governmental claims of pollution where the consequences of not settling a valid claim are considerably disadvantageous to the nonsettler. See 42 U.S.C. § 9607 (c) (3) (1988) (treble damages); G. L. c. 21E, § 5 (*a*), as amended by St. 1991, c. 476, § 9 (joint and several liability).

[22]We have not decided which party has the burden of proof as to the existence or nonexistence of a sudden and accidental discharge. See n.7 above. Here, even if we were to assume that the burden would normally be on the insured, we place it on the insurer when the insurer is in breach of its duty to defend.

cated in the first numbered section of this opinion, that there was no coverage of the Cannons claims, and thus the insurers have met that burden.

Polaroid argues that, if a defense-defaulting insurer may raise a coverage question as to a settled claim, the insurer runs no substantial risk in declining to defend the claim. The insurer's only risk, so the argument goes, is that, if it loses its claim that it has no defense obligation, the insurer will have to pay defense costs, amounts it would have to pay anyway if it assumed the defense immediately. This argument ignores the benefit of controlling the defense, and the risk of a settlement at an amount that is reasonable but higher than that for which the insurer could have settled the case. This argument also assumes that an insurer will choose to do the wrong thing, a course of conduct that may adversely affect its reputation in a competitive commercial insurance underwriting market. Even more significant is the likely impact in such a case of G. L. c. 93A with its provisions for damages and attorneys' fees where an insurer's acts are unfair or deceptive. The rule we adopt does not provide a safe harbor for an insurer that improperly declines to defend a claim.

The Appeals Court gave one policy reason for the desirability of the rule that denies a defense-defaulting insurer the right to argue that a settled claim was not within the policy coverage. It concluded that such a rule encouraged settlements, a worthy goal because of court congestion. *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 326 (1991). The incentive, however, is not always appropriate. That rule tends to encourage an insured, troubled as to whether its insurer has any indemnity obligation as to a claim, to settle the claim and thereby conclusively resolve the coverage issue in its own favor. As we have concluded in this case, the rule is inappropriate to apply when it is clear that none of the underlying claims is within policy coverage. In such a case, at least, keeping the underlying claim out of the

courtroom is not a sufficient justification for applying the rule.[23]

*Judgment affirmed.*

---

[23]We acknowledge that we have not resolved all the problems that may arise when an insured settles a claim that its insurer improperly declined to defend. We have not dealt with the case of a bad faith refusal to defend and the insured's rights to damages that may then exist under G. L. c. 93A, as well as under the common law. We have left unanswered the case of a collusive settlement between the insured and the plaintiff in the underlying action, where each would normally hope to place the claim within the coverage of the policy. Finally, we have not indicated what should happen if the settlement involved a claim or claims partly within and partly not within the policy coverage.