King, J.
The plaintiff, The Liquor Liability Joint Underwriting Association of Massachusetts (“LLJUA”), seeks to recover from the defendant, Hermitage Insurance Company (“Hermitage”), LLJUA’s costs in defending and settling an action brought against The Lamplighter, Inc., d/b/a Nikki’s 1 (“the insured”). A Boston establishment licensed to sell alcoholic beverages, the insured was covered by insurance policies issued by both parties when a patron, Michael O’Brien (“O’Brien”), sustained injuries from an assault and battery committed by another patron, giving rise to the underlying action. LLJUA alleges that Hermitage breached its duties to defend and indemnify the insured. Hermitage argues that it had no duty. At issue *311 is the scope of an assault or battery exclusion provision in Hermitage’s policy. For reasons set forth below, LLJUA’s motion for summary judgment is hereby allowed and Hermitage’s motion for summary judgment is hereby denied.
BACKGROUND
The following facts are not disputed:
Hermitage is a commercial general liability insurance provider. On or about March 22,1990, Hermitage issued Policy No. HMP 102301 (“the Hermitage policy”) to the insured for the period from March 11, 1990 to March 11, 1991, with a policy limit of $500,000. According to the terms of the Hermitage policy, Hermitage was obliged to:
.. . pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . (Emphasis added.)
“Occurrence” is defined in the Hermitage policy as:
... an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . . (Emphasis added.)
An endorsement to the Hermitage policy further provides:
Assault and/or battery shall not be deemed an accident under the above mentioned policy, nothing in the policy to the contrary. (Emphasis added.)
When purchasing the Hermitage policy, the insured believed that the policy provided coverage for damages arising from fights among patrons. The insured would not have purchased the policy otherwise.
LLJUA is a nonprofit association created by state legislation to provide liquor legal liability insurance to sellers and distributors of alcohol who were previously unable to obtain insurance in the private market. See St. 1985, c.223, §2. The scope of the insurance policy provided to the insured by LLJUA for the period from January 22, 1990 to January 22, 1991 (“the LLJUA policy”) is limited to coverage for negligence in the distribution, sale or serving of alcoholic beverages.[1]
The LLJUA and Hermitage policies both contain “Other Insurance” sections. The LLJUA policy’s “Other Insurance” provisions state:
If other valid and collectible insurance is available to the insured for a loss we cover under this Policy, our obligations are limited as follows . . . If all of the other insurance permits contribution by equal shares, we will follow this method also. (Emphasis added.)
The “Other Insurance” provisions of the Hermitage policy state:
If all such valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable ¡for a greater proportion of such loss than would be payable if each insurer contributes an equal share . . . (Emphasis added.)
On April 4, 1990, Michael Covell, a patron of the insured, committed an assault and battery on the premises of the insured, causing O’Brien to sustain serious physical injury and other damages. On or about June 18, 1990, O’Brien filed an action against the insured and Michael Covell. O’Brien’s amended complaint asserts two counts against the insured: Count I for negligent service of alcoholic beverages; and Count II for negligent failure to provide adequate security.
On June 29, 1990, Hermitage disclaimed coverage, refusing to defend the insured on the ground that the assault or battery exclusion in its policy precluded coverage of O’Brien’s claims. On July 19, 1990, the LLJUA agreed to defend the insured. Count I of O’Brien’s amended complaint asserted a claim covered by LLJUA’s policy; Count II did not because the policy did not cover a claim for failure to provide adequate security. On November 14, 1991, Hermitage reiterated its denial of coverage. In a letter to Hermitage’s counsel dated December 10, 1991, LLJUA, through counsel, outlined its analysis of Hermitage’s coverage of the O’Brien action, concluding that Count II of the underlying action was within the scope of coverage of the Hermitage policy and that Hermitage was in breach of its duty to defend the insured.
The O’Brien action was tried to a jury on June 12, 1992, resulting in a jury verdict for O’Brien against the insured in the amount of $80,000. Although LLJUA requested a special verdict slip to enable the jury to determine liability as to Count I and Count II separately, the court denied the request and a general verdict was rendered. The court allowed O’Brien’s motion for costs in the amount of $5,787.92. Subsequently, the ^LJUAand O’Brien entered into a General Release and Settlement pursuant to which the LLJUA paid to O’Brien $90,000.[2] A Stipulation of Dismissal with Prejudice was filed on August 17, 1992. LLJUA incurred $35,043.50 in attorneys fees and $3,669.60 in costs to defend the insured in the underlying action.[3]
As to subrogation, the LLJUA policy provides:
If the Insured has any rights to recover all or part of any payment we have made under this Policy, those *312 rights are transferred to us ... At our request, the Insured will bring “suit” or transfer those rights to us and help us enforce them. (Emphasis added.)
On August 26, 1992, in consideration for the O’Brien settlement paid by LLJUA and pursuant to the subro-gation clause in the LLJUA policy, the insured executed an assignment of rights to LLJUA regarding “all of [the insured’s] rights, claims, demands, actions and causes of actions both at common law, in equity, and under the Massachusetts General Laws arising out of any and all rights [the insured] has or may have under the Hermitage Policy ..."
On October 16, 1992, LLJUA filed this action against Hermitage for declaratory and monetary relief. LLJUA’s complaint is in three counts, alleging breach of contract (Count I) and unjust enrichment (Count II), and asserting subrogation as the basis on which it has standing to pursue the insured’s rights against Hermitage (Count III). Both parties have filed motions for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Here, the material facts are not disputed by the parties and interpretation of the Hermitage policy is a question of law for the court since no disputed facts bear upon that interpretation. See USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989), rev. denied, 406 Mass. 1104 (1990).
Hermitage Breached its Duty to Defend
It is undisputed that Count I of O’Brien’s complaint in the underlying action, alleging negligent service of alcoholic beverages, is not within the coverage of the Hermitage policy. As to Count II, LLJUA argues that Hermitage had a duty to defend and indemnify the insured. According to LLJUA, the assault or battery exclusion in the Hermitage policy excludes from coverage only damages arising from assault or battery committed by the insured, its agents or employees. Hermitage argues that it had neither a duty to defend nor a duty to indemnify the insured because the assault or battery exclusion in the Hermitage policy applies to all occurrences of assault or battery, whether committed by the insured, its agents or employees, or third parties.
Count II of O’Brien’s complaint is clearly within the coverage of the Hermitage policy. The Hermitage policy indemnifies the insured for bodily injury or property damage that is “neither expected nor intended from the standpoint of the insured” and is caused by an “occurrence,” defined by the policy as an “accident.” An endorsement to the policy states that “(ajssault and/or battery shall not be deemed an accident.”
When there are two rational interpretations of language in an insurance policy, the insured is entitled to the benefit of the one that is most favorable to it. Hazen Paper Co. v. United States Fidelity and Guar. Co., 407 Mass. 689, 700 (1990). It is also appropriate for the court to consider the expectations of an objectively reasonable insured reading the relevant policy language. Id.
As the insured did, the court interprets the policy language to exclude from coverage damage caused by intentional acts — including assault or battery — of the insured, its agents, or its employees; not assaults or batteries of third parties. See 2500 Motel Corp. v. Investors Ins. Co. of Am., 564 N.Y.Supp.2d 750, 751 (App.Div. 1991) (same assault or battery exclusion language construed against insurer). Had Hermitage intended to exclude from coverage damages resulting from acts of the insured’s patrons, it knew how to and should have done so unambiguously.[4] Cf. American Home Assurance v. Libby-Owens-Ford Co., 786 F.2d 22, 26 (1st Cir. 1986) (insurance company should use specific language to exclude from coverage consequential damages).
Hermitage had a duty to defend the insured against Count II in the underlying action because the charges therein were, at least, “reasonably susceptible of an interpretation that they state ... a claim covered by the policy terms.” Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1984). By refusing to defend or participate in the defense of this action, Hermitage breached its duty to defend the insured.
For breaching its duty to defend the insured, Hermitage is liable in contract. Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 762 (1993). On the facts of this case, the cost of defending the insured against Count II of the O’Brien action constitutes the damages flowing from Hermitage’s breach. See id. However, this amount cannot be precisely calculated since LLJUA defended as to both Count I and Count II. Under these circumstances, as between LLJUA and Hermitage, each with an independent duty to defend the insured, it is appropriate that the cost of defense be borne equally. The “other insurance” provisions contained in both parties’ policies, although not specifically addressing the circumstances presented here, implicitly indicate an intent that contributions to defense costs be in equal amounts. See Federal Ins. Co. v. Cablevision Sys. Div. Co., 836 F.2d 54, 58 (2d Cir. 1987) (although explicitly addressing sharing of indemnification costs, “other insurance” language indicates intent with regard to sharing of defense costs).[5]
Hermitage Breached its Duty to Indemnify
Through subrogation, LLJUA stands in the shoes of the insured. Having defended and indemnified the insured in the underlying action, LLJUA is now entitled to recoup its expenses by pursuing any causes of action to which the insured has rights. See Travelers Ins. Co. v. Graye, 358 Mass. 238, 240-41 (1970). *313 Hermitage argues that LLJUA cannot recover because the insured has suffered no damages. To the contrary, subrogation provides LLJUA a right of recovery. “Sub-rogation is the right that one party has against a third party following the payment, in whole or in part, of a legal obligation that ought to have been met by such third party.” A.D. Windt, Insurance Claims and Disputes §10.05, at 407 (1982).
Hermitage’s failure to defend does not bar it from contesting its indemnity obligation. Polaroid Corp., supra at 762. LLJUA argues that Hermitage has the burden of proving that Count II in the underlying action was not a claim covered by Hermitage’s policy. This court has found no authority, one way or the other directly on this issue. In Polaroid, the court, in dicta, stated it agreed with the proposition “that an insurer that wrongfully declines to defend a claim will have the burden of proving that the claim was not within its policy’s coverage.” Id. at 764. The court, however, took no position as to what should happen in a case where, as here, the settlement involved a claim “partly within and partly not within the policy coverage.” Id. at 766, n.23. In this case, where the settlement was reached after a general verdict in favor of O’Brien and where Hermitage’s breach of its duly to defend probably contributed to the trial judge’s refusal to submit special questions to the jury, fundamental fairness suggests that the burden of proof as to the lack of coverage should be on Hermitage. For this reason, the court concludes that the burden of proof is on Hermitage. Hermitage has not proven that Count II in the underlying action was not a claim covered by its policy or that the jury verdict and subsequent settlement did not arise from Count II for which it is liable. Had Hermitage participated in the defense of O’Brien’s action and explained to the trial judge the need for special questions, it is likely that the trial judge would have submitted special questions to the jury. In the absence of answers to such special questions, Hermitage is now unable to prove that the $90,000 payment was in settlement of a claim for which Hermitage did not provide coverage.
Hermitage argues that it should not be liable for more than one-half of the $90,000 settlement while LLJUA argues that Hermitage should be liable for the full amount. On this issue, the court agrees with Hermitage. A judgment against Hermitage for the full amount of the settlement would create an unwarranted windfall for LLJUA.[6] At this point, there is no way to ascertain whether the juiy found liability on Count I, Count II or both. Under these circumstances the more equitable result, consistent with the “Other Insurance” provisions of the policies, is to hold Hermitage responsible for $45,000, one-half of the cost of the settlement.
ORDER
Accordingly, it is hereby ORDERED that judgment enter as follows:
(1) Judgment on Counts I and III for The Liquor Liability Joint Underwriting Association of Massachusetts against Hermitage Insurance Company in the amount of $64,356.55 plus interest and costs.
(2) Judgment of dismissal as to Count II in view of the judgment entered on Counts I and III.
(3) It is hereby DECLARED that Hermitage Insurance Company breached its duties to defend and to indemnify The Lamplighter, Inc., d/b/a Nikki’s 1, in the underlying action, O’Brien v. The Lamplighter, Inc., d/b/a Nikki’s 1, Civil No. 90-3498-C (Suffolk Super. CL).
(4) It is hereby DECLARED that The Liquor Liability Joint Underwriting Association of Massachusetts had no duty to indemnify The Lamplighter, Inc. for the claims contained in Count II of the underlying action.

 St. 1985, c. 223, §1 defines “liquor legal liability insurance” as “insurance coverage against the legal liability of the insured and against loss, damage, or expense incident to a claim arising out of death or injury to any person as a result of negligence in the distribution, sale or serving of alcohol by any licensee . . .”

 The settlement was approximately $ 15,000 less than the amount of the judgment including interest and costs.

 In one of its briefs. Hermitage contests the reasonableness of LLJUA’s defense costs and requests a hearing if the court reaches the issue. LLJUA carefully documented the reasonableness of its attorneys fees and costs. Hermitage has filed no affidavit contesting the reasonableness of these costs. Thus, Hermitage has not shown the existence of a genuine issue of material fact as to the reasonableness of the attorneys fees and costs. The court finds the claimed attorneys fees costs reasonable. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).

 Hermitage issued another policy which is clear and unambiguous on the issue raised in this case. In that other policy. Hermitage excludes from coverage “A) [a]n assault and/or battery caused by or at the instigation or direction of: (1) the insured, his agent or employee; (2) any patron of the insured; or (3) any other person; or B) [a]ny act or omission of the insured, his agent or employee in connection with the prevention or suppression of an assault and/or battery or criminal acts by third parties."

 LLJUA argues that Hermitage should be required to pay five-sixths of defense costs, a share in proportion to the Hermitage policy’s liability limit of $500,000 as compared to the LLJUA policy’s $100,000 limit. Neither Berke Moore Co. v. Lumbermens Mut. Casualty Co., 345 Mass. 66 (1962), nor the treatise cited by LLJUA in any way support this position. The out-of-state cases LLJUA cites are inapposite because they present circumstances in which multiple policies provide coverage for the same claims. See CNA Casualty Co. v. Seaboard Sur. Co., 222 Cal.Rptr. 276, 289 (1st Dist. 1986); Sacharko v. Center Equities Ltd. Partnership, 479 A.2d 1219, 1224 (1984).

 If LLJUA felt it had a claim for punitive damages against Hermitage, it could have brought a claim pursuant to G.L.c. 93A. Such a claim was never asserted in this case.