36 F.3d 1089
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Patrick M. CASEY, Plaintiff, Appellant,
v.
METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY,
Defendant, Appellee.
 No. 93-2204
 United States Court of Appeals,
First Circuit.
 October 4, 1994
 
 Appeal from the United States District Court for the District of New Hampshire [Hon. Shane Devine, Senior U.S. District Judge ]
 Francis G. Murphy, Jr., with whom Nixon, Hall & Hess, P.A. was on brief for appellant.
 Alice Olsen Mann with whom Karyn T. Hicks and Morrison, Mahoney & Miller were on brief for appellee.
 D.N.H.
 AFFIRMED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 In April 1989, Patrick Casey was traveling in New Hampshire in a Subaru owned and driven by his fiancee, Susan Donahue. Seeing an injured dog in the lane directly ahead of them, Donahue parked in the breakdown lane. Casey got out and picked up the dog in order to take him to a veterinarian. While Casey was returning to the Subaru but still about ten feet away from its rear, he was struck by another car and severely injured. The driver of the other car, caught after a chase, had a blood alcohol level of .22 per cent, was violating a license restriction requiring corrective lenses, and had no liability insurance coverage in effect.
 
 
 2
 Casey eventually sued Metropolitan Insurance Company which had insured Donahue's Subaru. Casey claimed to be covered by the uninsured driver provisions of the policy which are described below, but Metropolitan denied coverage. Casey's suit, brought in the New Hampshire superior court, was removed to federal court. On May 17, 1993, the district court, based on stipulated facts, ruled on summary judgment that Casey was not covered under the uninsured motorist portion of the policy.[1]
 
 
 3
 After the district court's ruling on the uninsured motorist provision, Casey filed a motion to reform the policy to have himself listed as an additional named insured. The magistrate-judge rejected this motion, the trial upheld the ruling, and a final judgment was entered. Casey's appeal followed. We affirm.
 
 
 4
 At the threshold, we note that the Metropolitan policy stated that it was a contract made under, and incorporating, Massachusetts laws relating to automobile insurance. Donahue and Casey lived in Massachusetts, and the Subaru was registered there. On appeal, Casey suggests that New Hampshire law may be pertinent insofar as its declaratory action statute under which Casey sued places the burden of proof to disprove coverage on the insurance company, N.H. Rev. Stat. Ann. Sec. 491:22-a, and New Hampshire courts construe ambiguities against the insurer. State Farm Mutual Auto Ins. Co. v. Cookinham, 604 A.2d 563 (N.H. 1992).
 
 
 5
 Massachusetts law appears to be otherwise as to the burden of proof. See Kelleher v. American Mutual Ins. Co. of Boston, 590 N.E.2d 1178, 1180 (Mass. App. Ct.), review denied, 597 N.E.2d 444 (Mass. 1992). Similarly, where (as here) the standard policy language is prescribed by statute, Massachusetts courts do not construe the language against the insurer. Bilodeau v. Lumbermens Mutual Casualty Co., 467 N.E.2d 137, 140 (1984). It appears to us that the New Hampshire courts would apply Massachusetts law in this case, since the policy was made and the car kept in that state. See Glowski v. Allstate Ins. Co., 589 A.2d 593, 595 (N.H. 1991); cf. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941) (in diversity cases the forum state's choice of law rules govern). As it happens, the burden of proof is irrelevant where the facts are stipulated, and the policy is not ambiguous.
 
 
 6
 We assume favorably to Casey that "the application of policy language to known facts presents a question of law for the court," Kelleher, 590 N.E.2d at 1180, and in any event our review of summary judgment is plenary. The uninsured motorist portion of the policy, in describing the scope of coverage, states that "[w]e will pay damages to or for ... '[y]ou, or any household member' or '[a]nyone occupying your auto with your consent at the time of the accident.' " Casey claims coverage under each of these three alternatives.
 
 
 7
 We begin with the reference to "you." The introductory section of the policy states that "[t]his insurance policy is a legal contract between the policy owner (you) and the company (we or us)." The "definitions" section then provided that "[y]ou or [y]our ... refers to the person named on the Coverage Selections Page." The page in question states as item 1 that "this policy is issued to: SUSAN R DONAHUE."
 
 
 8
 We think it is apparent that Donahue, and not Casey, is the "you" in question. Although Casey's name appears on the same page, it is only in the "operator information" section as an additional driver of the insured vehicle. In Santos v. Lumbermen's Mutual Casualty Co., 556 N.E.2d 983, 986 (Mass. 1990), the Supreme Judicial Court construed identical policy language, finding that " '[y]ou,' ... refers to the owner of each policy." Accord Pisani v. Travelers Insurance Co., 560 N.E.2d 155 (Mass. App. Ct. 1990).
 
 
 9
 We also reject Casey's claim that he qualifies as "a member of Donahue's household." Casey and Donahue, who later married, resided together at the time of the accident and shared expenses including the policy premiums. If the term were used generically, Casey would have a colorable argument that he was a member of Donahue's "household." Unfortunately for him, the policy defines "household member" narrowly as meaning "anyone living in your household who is related to you by blood, marriage, or adoption." At the time of the accident Casey was not related to Donahue by blood, marriage, or adoption, and thus fails to qualify under this explicit and unambiguous requirement.
 
 
 10
 Vaiarella v. Hanover Ins. Co., 567 N.E.2d 916, 919 (Mass. 1991), relied upon by Casey, is not in point. It involved a mother who sought coverage under her son's uninsured motorist policy; as mother and son were obviously related by blood, the question of concern to the court was whether the mother was "living in [the policyholder's] household." The court never suggested that a close friend who lived in the same house and acted in a motherly fashion could be deemed to be "related ... by blood, marriage, or adoption."
 
 
 11
 Casey's final argument is that when the accident occurred he was "occupying" the vehicle with the Donahue's consent. The Metropolitan policy defines "occupying" as embracing one who is "in, upon, entering into, or getting out of" the insured vehicle. Casey cites a number of cases from jurisdictions other than Massachusetts that have dramatically expanded the definition of "occupying" in the auto insurance context.[2]
 
 
 12
 Massachusetts courts, however, have given the term "occupying" in auto insurance contracts a more limited meaning. In Kelleher, 590 N.E.2d at 1180, Kelleher was struck by an uninsured motorist just after getting out of his vehicle and starting to cross the street; although Kelleher was approximately three to four feet away at the time of the accident, the court held that Kelleher had "completely severed his relationship with the vehicle." Id. at 1180. Even if Kelleher could be distinguished, somewhat doubtfully, because the claimant was leaving rather than returning to the car, a second Massachusetts case is even more damaging to Casey. In Rosebrooks v. National General Ins. Co., 434 N.E.2d 675 (Mass. App. Ct.), review denied, 440 N.E.2d 1177 (Mass. 1982), the court found that the claimant Rosebrooks was not "entering" the insured vehicle even though she was about to enter the car, was two to three feet from the door handle when she fell, and was touching the vehicle with her hand at the moment of the accident. Id. at 677.
 
 
 13
 It is sad that Casey, commendably engaged in a humanitarian gesture when injured, should apparently be left with little insurance protection for what were clearly awful injuries. But we are not free to alter what appears to be the reasonably clear message of Massachusetts precedents. If Massachusetts wishes to follow what Casey has described as "the clear modern trend of case law" to embrace a broader meaning of "occupying," that step must be taken by the Massachusetts courts. We conclude that Casey falls into none of the three alternative categories that qualify for uninsured motorists protection under this policy.
 
 
 14
 Finally, Casey seeks review of the refusal to allow him to amend his complaint, after summary judgment against him, to seek reformation of the Metropolitan policy in order to list him as an additional named insured. Even assuming that Donahue and Casey were under a mistaken apprehension as to coverage, there is no reason to believe that Metropolitan shared this misapprehension, creating a "mutual mistake [which] is reformable," Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 917 (Mass. 1993), nor is there any indication that this is a case of mistake "made by one party and known to the other party." Id. Under these circumstances, and in light of the failure of Casey to assert this claim before summary judgment had been granted against him, we think that there is no abuse of discretion in the district court's refusal to grant the belated motion to add the new claim. See Kennedy v. Josephthal & Co., 814 F.2d 798, 806 (1st Cir. 1987).
 
 
 15
 Affirmed.
 
 
 
 [1]
 The court also held that Casey was entitled to benefits under the policy's personal injury protection provisions. Metropolitan does not challenge the latter ruling
 
 
 [2]
 See, e.g., State Farm v. Cookinham, 604 A.2d 563 (N.H. 1992); Horace Mann Ins. Co. v. Neuville, 465 N.W.2d 432, 434 (Minn. Ct. App. 1991); Miller v. Loman, 518 N.E.2d 486 (Ind. Ct. App. 1987)