# United States Court of Appeals
## For the First Circuit

No. 13-2181

WILLIAM M. MCDERMOTT,

Plaintiff, Appellant,

v.

MARCUS, ERRICO, EMMER & BROOKS, P.C.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Marianne B. Bowler, Magistrate Judge]

Before

Thompson, Circuit Judge,
Souter, Associate Justice,*
and Stahl, Circuit Judge.

Philip H. Cahalin for appellant.
Stephen J. Duggan and Edmund A. Allcock, with whom Lynch & Lynch and Marcus, Errico, Emmer & Brooks, P.C. were on brief, for appellee.

December 29, 2014

    * The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

THOMPSON, Circuit Judge. We are, once again, called upon to interpret and apply the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A ("Chapter 93A"). This case has humble origins: a seemingly-simple dispute over several $25 late fees the Pondview Condominium trustees charged to one of their residents, appellant William McDermott ("McDermott"), after he didn't pay his condominium fees on time. Unable to resolve the matter with McDermott, the trustees hired law firm appellee Marcus, Errico, Emmer and Brooks, P.C. ("MEEB"), to collect from McDermott. Soon enough, what began as a low-stakes disagreement quickly blossomed into wide-ranging litigation in the state and federal courts. We are concerned here with the two-count complaint McDermott filed against MEEB in the federal district court. McDermott alleged that MEEB's collections activities violated both Chapter 93A and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

A magistrate judge held a bench trial and initially found in McDermott's favor on both counts. She awarded McDermott $10,400 on his Chapter 93A count, and $800 on the FDCPA claim. Both parties filed motions for reconsideration, following which the magistrate judge reversed in part, finding MEEB not liable under Chapter 93A, and leaving McDermott with only the $800 recovery under the FDCPA.

McDermott's timely appeal followed.

-2-

## I. BACKGROUND

The magistrate judge[1] issued a 203-page written decision following a six-day bench trial.  See McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1 (D. Mass. 2012).  We have no need to fully detail the extensive factual background in order to decide the narrow issues before us, and we commend the magistrate judge's thorough decision to the reader seeking a full run-down.  We need only sketch a rough outline of the goings-on, which we do based on the magistrate judge's factual findings, the vast majority of which are unchallenged on appeal.

McDermott owned two units -- 104 and 105 -- at the Pondview Condominiums, a 19-unit condominium in Lynn, Massachusetts.  Pondview's trustees (from now on collectively referred to as "Pondview"), as permitted by the condominium documents, required all unit owners to pay monthly assessments for the upkeep of common areas and facilities, along with several other types of monthly fees.[2]  Any assessments not paid on time incurred a late payment fee, which acted as a lien against the owner's unit.  If Pondview had to turn the matter over to collections, the condominium documents allowed for the assessment of attorney's

_____

[1] At the outset of the case, the parties mutually agreed to the jurisdiction of a magistrate judge over all proceedings, including trial.

[2] Monthly fees included a loan payback charge, which was "either part of a special assessment or a line item in [Pondview's] budget."

-3-

fees, late charges, and collection costs against the offending owner.

McDermott lost his job in 2004. He fell behind on his condominium fees for both units in July of that year, and the next month he fell behind on the late payment fees, too. In September, McDermott agreed to pay two months of condominium and late fees for unit 105 (but not unit 104) by September 22. Although McDermott ended up making payments for both units by September 22, this did not bring the accounts current because he did not pay all of the late fees.

In the first of a series of unfortunate misunderstandings, McDermott seems to have thought his September payments brought him up-to-date. Compounding his troubles, McDermott paid his October monthly assessment for unit 105 late, triggering another late fee. He fell further behind in December.

On December 18, Pondview sent McDermott a letter detailing how much he owed for unit 105. The letter also told McDermott that, pursuant to the condominium documents, he was being charged $25 late fees for payments received after the 15th of the month during which each of the payments were due.[3] According to Pondview, by the end of 2004 McDermott owed, including late payment fees, $346.62 on unit 105 and $380.33 for unit 104. McDermott,

_____

[3] The magistrate judge found that MEEB "was not involved in the decision to impose a $25.00 charge for delinquent loan payback charges or to change any policy to impose late fees."

-4-

however, let Pondview know that he disagreed with the late fee assessments and would not pay them. By the time March 2005 rolled around, McDermott had not paid condominium fees, loan payback charges, or late fees for either unit for January, February, and March.

Having apparently decided enough was enough, Pondview brought in MEEB to collect McDermott's debt. MEEB informed McDermott in a March 23, 2005 letter that he owed $1,495.61 on unit 104, an amount it said encompassed collection costs and attorney's fees. A separate letter with the same date told McDermott he owed $1,431.61 on unit 105. McDermott, who does not appear to have lawyered-up by this point, stood by his refusal to pay.

Over the approximately three-and-a-half years between April 2005 and September 2008, MEEB filed nine collection actions in Massachusetts state court against McDermott. McDermott retained counsel somewhere along the way (the exact date is not important here). Five of MEEB's collection suits related to unit 105, and four related to unit 104. Only two reached trial, but MEEB won them both and was awarded attorney's fees to boot.[4]

During the course of its collection activities, and while litigation was ongoing, MEEB repeatedly contacted the mortgagees on each of McDermott's units without his knowledge or consent,

---

[4] In one of these cases the state court awarded $14,000 in attorney's fees, approximately half of what MEEB had sought.

informed them of McDermott's delinquencies, and demanded payment directly from them. When asked to do so, the mortgagees accommodated MEEB and paid the amounts requested. They then passed these costs on to McDermott by tacking them onto the outstanding mortgages. Further, MEEB occasionally contacted McDermott directly, despite knowing he was represented by counsel.

Displeased with MEEB's collection activities, McDermott filed suit against the firm in the federal district court for Massachusetts on February 3, 2009. His two-count complaint alleged a variety of violations of federal (the FDCPA) and state (Chapter 93A) law.[5]

Specifically, McDermott took issue with the wording of several collection letters, contending they "were deliberately misleading, sporadic, inconsistent, confusing, and contained numerous errors and double billings." He also alleged MEEB "consistently and deliberately misleadingly, confusingly, and deceptively conflated its legal fees with condominium assessments in most of its communications concerning [his] debts," and made certain "oppressive and extortive" statements to him in violation

---

[5] McDermott's complaint grounded federal jurisdiction on 28 U.S.C. § 1331, as his was an action "arising under the Constitution, law, or treaties of the United States." He also invoked the federal court's supplemental jurisdiction to decide his state-law-based Chapter 93A claims. Although in an apparent typographical error McDermott's complaint cited the wrong statute for supplemental jurisdiction (the non-existent "28 U.S.C. § 1328" instead of 28 U.S.C. § 1367), MEEB has never asked the federal courts to decline the exercise of supplemental jurisdiction.

of the FDCPA.  McDermott further complained about MEEB's direct contacts with himself and his mortgagees.  McDermott wrapped up his complaint by espousing his theory that MEEB ran up between $54,000 and $59,000 in legal fees "by its deliberate, intentional provocation of a dispute between Pondview and [himself] over $150 in unlawful late fees and by its other, relentless, egregious, unfair, deceptive, false, misleading, oppressive, and abusive violations of the FDCPA."

After trial, the magistrate judge found that although MEEB acted at all times in good faith and that none of its actions were deceptive, it nevertheless committed numerous violations of the FDCPA.  The details of each FDCPA violation are not important for our purposes, other than that the judge found none of them were in bad faith.[6]  The magistrate judge further determined that, pursuant to regulations issued by the Massachusetts Attorney General, MEEB's FDCPA violations served as a basis for imposing liability under Chapter 93A, even though MEEB had not committed any unfair or deceptive acts.  In other words, she found the FDCPA violations constituted "per se" violations of Chapter 93A.  She also found, however, that MEEB did not commit any unfair or deceptive acts that could give rise to Chapter 93A liability independent of the per se violations.  Ultimately, the magistrate

---

[6] The magistrate judge also found some of McDermott's FDCPA claims, having been brought outside of the FDCPA's one-year limitations period, were barred as untimely.

judge awarded McDermott $800 under the FDCPA, and $10,400 for the Chapter 93A violations.

MEEB subsequently filed a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e).[7] The magistrate judge reviewed a newly-decided case from the Massachusetts Supreme Judicial Court ("SJC") interpreting Chapter 93A, Klairmont v. Gainsboro Restaurant, Inc., 987 N.E. 2d 1247 (Mass. 2013), determined her finding of per se Chapter 93A violations was incorrect as a matter of law, and vacated the judgment on that count. See McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 969 F. Supp. 2d 74 (D. Mass. 2013). She did not disturb her findings with respect to MEEB's FDCPA violations. As a result of the magistrate judge's reconsideration, McDermott saw his recovery slashed from $11,200 to $800.

Unsatisfied with this outcome, McDermott appealed to us.

## II. STANDARD OF REVIEW

This case comes to us after a full bench trial, so we review the magistrate judge's factual findings for clear error. Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 420 (1st Cir. 1996). The clear error standard "constrains us from deciding factual issues anew." Id. "[W]e may not disturb the [magistrate judge's] record-rooted findings of fact unless on the whole of the evidence

---

[7] McDermott filed one too, but we need not discuss it as McDermott does not appeal its denial.

-8-

we reach the irresistible conclusion that a mistake has been made." Id. We afford this deference not just to straight-up findings of fact, but to any inferences drawn from them. Id. Similarly, we defer to a magistrate judge's "findings regarding an actor's motivation" where they are "plausible." Id. In sum, "we cannot second-guess the court's credibility determination[s]" following a bench trial. Calderón-Ortega v. United States, 753 F.3d 250, 253 n.1 (1st Cir. 2014).

In stark contrast to factual findings, we afford no deference to the magistrate judge's legal conclusions, which we review de novo. United States v. 15 Bosworth Street, 236 F.3d 50, 53 (1st Cir. 2001); Smith, 76 F.3d at 420. And because the magistrate judge granted MEEB's motion for reconsideration on legal grounds only (rather than after, say, a reevaluation of the facts), we review the legal conclusions undergirding that decision de novo, too. See, e.g., Santiago v. Puerto Rico, 655 F.3d 61, 67 (1st Cir. 2011) (applying de novo review where "the parties' arguments were directed to the underlying substantive issue (the propriety vel non of summary judgment) rather than the procedural issue (the desirability vel non of reconsideration)").

## III. DISCUSSION

McDermott raises several discrete arguments in this appeal. First and foremost, he says the magistrate judge erred when she snatched away his victory on the Chapter 93A count because

MEEB's FDCPA violations give rise to per se Chapter 93A liability, without the need of showing that they are unfair or deceptive. Next, he argues that the magistrate judge should have found MEEB violated the FDCPA by charging him excessive legal fees. Last but not least, and predicated upon the assumption that we will conclude MEEB is liable to him under Chapter 93A on some theory, McDermott takes the position that MEEB's violation of Chapter 93A entitles him to an award of multiple damages. Not surprisingly, MEEB disagrees with each of McDermott's arguments and asks us to affirm the magistrate judge's orders.

We address these topics in turn.

## A. Chapter 93A Liability

### 1. The Basics and the Concept of Per Se Liability

This appeal requires us to interpret and apply Massachusetts consumer protection law as embodied in Chapter 93A. More specifically, we are called upon to look at the concept of "per se" Chapter 93A liability. We open with a primer on the statute, discuss the concept of per se violations, and finally address the parties' arguments on appeal.

Because McDermott's Chapter 93A arguments implicate matters of state law, we apply the substantive law of Massachusetts. See Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998) ("When facing a claim that does not arise under the Constitution or the laws of the United States, a federal court must

-10-

apply the substantive law of the forum in which it sits . . . ."); see also O'Brien v. Skinner, 414 U.S. 524, 531 (1974) (recognizing that it is not the function of a federal court "to construe a state statute contrary to the construction given it by the highest court of a State").  This is so even where we are dealing with "a state-law claim brought under supplemental jurisdiction," such as McDermott's Chapter 93A claim.  Dykes, 104 F.3d at 39.

The Massachusetts statute at issue here, Chapter 93A, straightforwardly declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."  Mass. Gen. Laws ch. 93A, § 2(a). "[T]he intent of the legislature" is that a court hearing a Chapter 93A claim will be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. [§] 45(a)(1)), as from time to time amended."  Mass. Gen. Laws ch. 93A, § 2(b).  The statute permits the Massachusetts Attorney General to implement "rules and regulations interpreting the provisions" of Chapter 93A, but these "shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of the" Federal Trade Commission Act, "as from time to time amended." Mass. Gen. Laws ch. 93A, § 2(c).

Although Chapter 93A broadly prohibits "unfair" and "deceptive" conduct in trade or commerce, the statute does not spell out what specific actions make the grade.[8]  Doing so would not be feasible anyway because, as the SJC has observed, "[t]here is no limit to human inventiveness in this field."  Kattar v. Demoulas, 739 N.E.2d 246, 257 (Mass. 2000) (alteration in original) (internal quotation marks omitted).  Thus, whether or not particular conduct violates Chapter 93A is generally determined on a case-by-case basis.  See id.

Nevertheless, Massachusetts courts have recognized that violations of a limited number of statutes automatically give rise to liability under Chapter 93A.  See, e.g., Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 917 (Mass. 1993) (violation of state unfair claims settlement act, Mass. Gen. Laws ch. 176D, constitutes violation of Chapter 93A); Reddish v. Bowen, 849 N.E.2d 901, 906 (Mass. App. Ct. 2006) (same with respect to a home improvement contractor's violation of Mass. Gen. Laws ch. 142A). This automatic liability, which the parties refer to as per se liability, could be thought of as a species of strict liability. In the instances where the Massachusetts appellate courts have found per se Chapter 93A liability based on a statutory violation, such conclusion, as we discuss hereafter, was grounded on explicit statutory language.

---

[8] Neither does the statute define "trade or commerce."

With respect to unfair claims settlement act violations like those addressed in Polaroid, per se Chapter 93A liability arises directly from the consumer protection act itself. Chapter 93A provides that "[a]ny person . . . whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D [i.e., the unfair claims settlement act] may bring an action in the superior court." Mass. Gen. Laws ch. 93A, § 9(1). In accordance with this statutory text, the SJC has recognized that "[a] consumer asserting a claim under [Chapter] 93A, § 9, may recover for violations of [Chapter] 176D, § 3, cl. 9, without regard to whether the violation was unlawful under [Chapter] 93A, § 2, because of the explicit statement to that effect in [Chapter 93A,] § 9." Polaroid, 610 N.E.2d at 917. Thus, Chapter 93A itself established that an act that violates the unfair claims settlement act violates Chapter 93A as well. Voilà, per se liability.

But Chapter 93A's language is not the only way to get to per se liability: it may also arise through the text of an independent statute, as in Reddish. The statute at issue there, Chapter 142A, regulates home improvement contractors and provides that "[v]iolations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of [Chapter 93A]." Mass. Gen. Laws ch. 142A, § 17. One of the act's provisions prohibits contractors from committing any "violation of

-13-

the building laws of the commonwealth." Mass. Gen. Laws ch. 142A, § 17(10). The Massachusetts Appeals Court has applied this plain language to conclude that a home improvement contractor's violation of the Massachusetts building code, thanks to Chapter 142A, § 17(10), "constituted an unfair or deceptive act under [Chapter 93A] by operation of [Chapter 142A,] § 17." Reddish, 849 N.E.2d at 908. Thus, Reddish points the way along this alternative path (i.e., the text of an independent statute) to per se Chapter 93A liability.

Taken together, these cases demonstrate a recognition by the Massachusetts courts that the Commonwealth's Legislature has decreed that a limited number of certain statutory violations automatically violate the consumer protection act as well. Whether the per se liability comes about through language the Legislature incorporated directly into Chapter 93A referencing another statute (as is the case with Chapter 176D), or whether it arises from the text of an independent statute (keep Chapter 142A in mind), it is a clear directive by the Legislature that a violation of that particular statute constitutes an automatic violation of Chapter 93A, without the need of showing the act was otherwise "unfair or deceptive" or occurred in "trade or commerce." This concept is critical to our resolution of the arguments on appeal.

## 2.  Per Se Chapter 93A Liability After <u>Klairmont</u>

We proceed to the parties' particular arguments about MEEB's per se Chapter 93A liability.  The question they have placed before us is narrow:  although Chapter 93A is a statute of broad applicability, <u>Kattar</u>, 739 N.E.2d at 257, in the wake of what they both consider to be the key case, <u>Klairmont</u> v. <u>Gainsboro Restaurant, Inc.</u>, 987 N.E.2d 1247 (Mass. 2013), do FDCPA violations give rise to so-called per se liability under Chapter 93A, § 2? Because the parties have relied so extensively on <u>Klairmont</u>, an extended discussion of it is required in order to place the parties' arguments in context.  And, although the magistrate judge interpreted and applied <u>Klairmont</u>, we consider its import de novo. <u>See</u> <u>Casavant</u> v. <u>Norwegian Cruise Line Ltd.</u>, 952 N.E.2d 908, 912 (Mass. 2011) (finding that "the boundaries of what may qualify for consideration as a [Chapter 93A] violation is a question of law") (internal quotation marks omitted).[9]

<u>Klairmont</u> involved the alleged wrongful death of a college student who, while in the midst of a cell phone

_____

[9] Some years ago, we noted that a violation of the FDCPA is a per se violation of Chapter 93A.  <u>French</u> v. <u>Corporate Receivables, Inc.</u>, 489 F.3d 402, 403 n.1 (1st Cir. 2007).  And before that, we stated that a violation of a federal consumer protection statute "constitutes a per se violation of Chapter 93A, § 2(a)." <u>Barnes</u> v. <u>Fleet Nat'l Bank, N.A.</u>, 370 F.3d 164, 176 (1st Cir. 2004).  These conclusory statements, devoid of substantive analysis or explanation, are not particularly helpful to our analysis here. Further, these cases were decided prior to <u>Klairmont</u>, which controls our interpretation of state law.

conversation, fell down a flight of steps at a bar.  987 N.E.2d at 1251.  The stairway, it turned out, was a bad stairway.  Not only was the very "presence of the stairs . . . obscured with hanging vinyl strips," id., the stairs themselves violated the Massachusetts building code in multiple respects.  For example, the stairway was not equipped with a self-closing "fire-rated" door and landing at the top, there were no hand rails, and the riser and tread dimensions did not meet the building code's dimensional requirements.  Id. at 1253.  Furthermore, the defendants[10] had rebuilt the stairs years before the decedent's fall, yet when they did so they "failed to acquire a building permit or to comply with the building code."  Id. at 1253-54.  Moreover, "the defendants knew that building permits and a change in use permit were required, as evidenced by the fact that the defendants filed, and then abandoned, multiple building permit and change in use permit applications."  Id. at 1254.

The plaintiffs (decedent's parents) brought a Chapter 93A count premised solely on the defendant's noncompliance with the Massachusetts building code.[11]  See id. at 1252.  They grounded their Chapter 93A theory on the interplay between Chapter 93A, § 2 and 940 C.M.R. § 3.16(3) -- an Attorney General regulation

---

[10] The bar itself and trustees of the legal entity that owned the real estate on which it was located.

[11] They also brought general negligence claims, but those are not germane here.

declaring that a violation of a state statute providing for public health, safety, or welfare is itself a Chapter 93A violation.[12]  See id.  In essence, the plaintiffs claimed the defendants were liable under Chapter 93A because they knew about the building code violations but failed to do anything about them.

The defendants took a different tack.  They argued that 940 C.M.R. § 3.16(3) should not be construed in such a way as to transform every act that violates a statute concerned with public health, safety, or welfare into a Chapter 93A violation because doing so would enshrine Chapter 93A as the "preeminent law of the Commonwealth."  Id. at 1254 (internal quotation marks omitted).  The defendants sought to convince the SJC that it was not enough for the plaintiffs to simply show a building code violation.  Instead, the defendants urged, they must prove the defendants' complained-of acts were "unfair or deceptive" before the defendants could run afoul of Chapter 93A.  Id.

---

[12] The regulation provides that

an act or practice is a violation of [Chapter 93A], § 2 if:

. . .

(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . .

940 C.M.R. § 3.16(3).

Taking on these arguments, the SJC first noted that the "building code may qualify as a regulation meant for the protection of the public's health, safety, or welfare" that is of concern to 940 C.M.R. § 3.16(3). Id. at 1254-55 (internal quotation marks omitted). Thus, in light of the Attorney General regulation, a violation of the building code opens a defendant up to the possibility of Chapter 93A liability. See id. at 1255 ("[T]o the extent the defendants contend that as a matter of law, [Chapter 93A] does not apply to claims premised on violations of the building code, we reject the argument.").

Yet, that the building code is embraced by the "unquestionably broad" ambit of 940 C.M.R. § 3.16(3) does not by itself render its violation a per se violation of Chapter 93A.[13] Id. The reach of the regulation -- emanating as it does from the Attorney General rather than the Legislature -- is "bound by the scope of [Chapter] 93A, § 2(a)." Id. This means that "under 940 [C.M.R.] § 3.16(3) a violation of a law or regulation . . . will be a violation of [Chapter] 93A, § 2(a), only if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce." Id. By making this pronouncement, the SJC sharply limited the occasions on which an unlawful act will lead to

_____

[13] Indeed, the SJC noted in no uncertain terms that the trial judge "misstated the law when she said that 'the defendants' [b]uilding [c]ode violations were per se deceptive and unfair acts or practices.'" Id. at 1255 n.16 (emphasis added).

-18-

liability under Chapter 93A through operation of the Attorney General's regulations.

The SJC, reiterating that "whether the particular violation or violations qualify as unfair or deceptive conduct is best discerned from the circumstances of each case," id. (internal quotation marks omitted), proceeded to review the evidence in the record relevant to the plaintiffs' Chapter 93A claim. First, it concluded the defendants' conduct was unfair and deceptive within the meaning of Chapter 93A because the defendants "consciously violated the building code for more than twenty years, thereby creating hazardous conditions in a place of public assembly where alcohol is served to commercial patrons." Id. Next, the SJC concluded the unfair and deceptive conduct occurred in trade or commerce because the victim was the bar's patron at the time of his accident, and because "the defendants knowingly failed to acquire the required permits in order to avoid the expense of building code compliance to their restaurant and bar business." Id. at 1256. Accordingly, the SJC found the defendants' conduct met both prongs of Chapter 93A.

The course of the SJC's analysis in Klairmont demonstrates exactly what it meant when it said that 940 C.M.R. § 3.16(3) is "bound" by the scope of Chapter 93A: despite the regulation's broad wording purporting to do so, the Attorney General is not empowered to issue regulations rendering certain

-19-

statutory violations "per se" Chapter 93A violations. Indeed, the SJC went out of its way to say that the trial judge got it wrong when she said the defendants' building code violations were per se violative of Chapter 93A.

The lesson of Klairmont may be summed up as so: the Massachusetts Attorney General's regulatory authority to "make rules and regulations interpreting" Chapter 93A, § 2(a), Mass. Gen. Laws ch. 93A, § 2(c), does not extend so far as to permit her to allow a plaintiff to show that a defendant has violated an independent statute in lieu of satisfying Chapter 93A's substantive requirements of showing the complained-of act was both unfair and deceptive and that it occurred in trade or commerce.

### 3. Per Se Chapter 93A Liability and the FDCPA

We come now to McDermott's arguments that MEEB's FDCPA violations result in per se Chapter 93A liability. He advances two separate, but related, grounds.

First, using the federal statute as his starting point, McDermott observes the FDCPA states any act that violates its provisions also violates the Federal Trade Commission Act ("FTC Act"). According to McDermott, the FTC Act is Chapter 93A's federal equivalent. By enacting Chapter 93A, he argues, the Massachusetts Legislature grafted federal consumer protection law, including the FDCPA, onto state law. In his view, this means that

-20-

a violation of the FDCPA violates the FTC Act and, by extension, Chapter 93A.

Second, McDermott focuses on a regulation promulgated by the Massachusetts Attorney General which is similar to the one addressed in Klairmont, and which explicitly provides that violations of federal consumer protection law count as Chapter 93A violations. See 940 C.M.R. § 3.16(4). The FDCPA, he maintains, is just such a consumer protection law. In McDermott's view, and thanks to this regulation, one who violates the FDCPA necessarily violates Chapter 93A at the same time.

Not so fast, says MEEB. First, it does not contest the magistrate judge's finding that it committed FDCPA violations. But, in its eyes, the SJC's Klairmont opinion was explicit that even per se Chapter 93A violations are subject to a "trade or commerce" requirement. In other words, a so-called per se violation is not truly per se, as per se findings satisfy Chapter 93A's first prong only (i.e., that the conduct at issue is unfair or deceptive). A plaintiff (here, McDermott) still has the burden of proving the conduct occurred in the course of trade or commerce. Because all of its interactions with McDermott were related to its representation of Pondview in a private dispute, MEEB did not act in a "business context" with respect to McDermott and, therefore, did not act in "trade or commerce" when it violated the FDCPA. It

-21-

follows, according to MEEB, that it may not be held liable under Chapter 93A.

Notably, MEEB misunderstands McDermott's arguments as being limited solely to a claim that per se liability arises through the Attorney General regulation, 940 C.M.R. § 3.16(4). As such, MEEB does not respond to McDermott's first argument that per se liability can also come from Chapter 93A's federal equivalent, the FTC Act. Therefore, we will first turn our attention to McDermott's argument that per se liability arises under the Attorney General regulation, 940 C.M.R. § 3.16(4).

### i.    Attorney General Regulation

In light of our discussion of <u>Klairmont</u>, McDermott's argument that per se Chapter 93A liability may be imposed by 940 C.M.R. § 3.16(4) is easily disposed of. Although <u>Klairmont</u> involved a different Attorney General regulation, 940 C.M.R. § 3.16(3), the two are substantially similar:

> Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of [Chapter 93A], § 2 if:
>
> . . .
>
> (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or
>
> (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection

-22-

Act or other Federal consumer protection statutes within the purview of [Chapter 93A], § 2.

940 C.M.R. § 3.16.

The regulation McDermott relies upon states that conduct which violates a federal consumer protection statute, like the FDCPA, also violates Chapter 93A.[14] For our purposes, the only relevant substantive difference between Klairmont's regulation, 940 C.M.R. § 3.16(3), and McDermott's, 940 C.M.R. § 3.16(4), is the source of law: § 3.16(3) looks to state consumer protection law, while § 3.16(4) refers to federal consumer protection law. Compare 940 C.M.R. § 3.16(3) (referring to Massachusetts statutes "intended to provide the consumers of this Commonwealth protection") with 940 C.M.R. § 3.16(4) (referring to "Federal consumer protection statutes within the purview of [Chapter 93A], § 2").

The logic underpinning Klairmont is clearly applicable here. We can conceive of no plausible rationale, and none has been suggested to us, for treating these two provisions differently

---

[14] The parties take it for granted that the FDCPA is a "Federal consumer protection statute[] within the purview of" Chapter 93A, § 2, as required by the Attorney General regulation. 940 C.M.R. § 3.16(4). The district courts that have considered the issue have concluded that it is. See In re Pharm. Indus. Average Wholesale Price Litig., 491 F. Supp. 2d 20, 84 (D. Mass. 2007); Dean v. Compass Receivables Mgmt. Corp., 148 F. Supp. 2d 116, 119 (D. Mass. 2001). The correctness of these holdings is confirmed by the text of the FDCPA itself, which sets forth one of its purposes as "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Thus, we agree the FDCPA is a consumer protection statute for the purposes of Chapter 93A.

based solely on the origin of the specific consumer protection law with which each is concerned. Indeed, finding Klairmont's reasoning inapplicable to § 3.16(4) would enshrine a distinction without a difference as a matter of Massachusetts law. This we refuse to do.

We, therefore, conclude that just as the scope of § 3.16(3) is bound by the strictures of Chapter 93A, including the requirements of showing unfair and deceptive conduct occurring in trade or commerce, so too is § 3.16(4) limited by those same requirements. Because the Attorney General is not permitted to regulate away these two requirements with respect to Chapter 93A claims based on violations of state consumer protection law, the Attorney General may not do likewise when the claimed violation arises out of federal consumer protection law. Applying Klairmont's reasoning, we reject McDermott's argument that 940 C.M.R. § 3.16(4) renders MEEB's violations of the FDCPA per se violative of Chapter 93A.

### ii. Per Se Liability Through Federal Consumer Protection Law

Reaching this conclusion does not settle the entire matter. Although MEEB seeks to characterize McDermott's liability arguments as premised solely on the Attorney General regulation, McDermott has in fact also argued per se liability arises through Chapter 93A's incorporation of federal consumer protection law into state law. His position is premised on the notion that

Massachusetts incorporated federal unfair competition law into state law when it enacted Chapter 93A.

As it turns out, the FTC Act is quite similar to Chapter 93A. Like Chapter 93A, it provides that "unfair or deceptive acts or practices in or affecting commerce[] are . . . unlawful." 15 U.S.C. § 45(a)(1); see also Mass. Gen. Laws ch. 93A, § 2(a) ("[U]nfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."). Chapter 93A's echo of the FTC Act's language, along with the legislative directive that courts interpreting Chapter 93A are to be guided by the federal courts' interpretation of this statute, see Mass. Gen. Laws ch. 93A, § 2(b), are important indications that McDermott is on the right track.

Decades ago, the SJC addressed the connection between federal consumer protection law and Chapter 93A. The SJC announced with striking clarity that Massachusetts has "wholly incorporated" the FTC Act, 15 U.S.C. § 45(a)(1), into Chapter 93A. Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 773 n.8 (Mass. 1975). Chapter 93A, it explained on another occasion, "was enacted in 1967, partly in response to [a Federal Trade Commission] policy to stop unfair practices on a State level before they become interstate problems." Purity Supreme, Inc. v. Attorney General, 407 N.E.2d 297, 301 (Mass. 1980). To effectuate this underlying motivation, Chapter 93A "incorporates the extensive body of Federal

administrative and decisional law under the FTC Act, at least in so far as it relates to definitions of 'unfair' and 'deceptive.'" Id. (internal citation omitted). Lest there be any doubt that the SJC has changed its thinking over the years, it recently stated that Chapter 93A "defines unfair acts or practices by reference to interpretations of those terms in the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (2006), in which [Chapter] 93A has its roots." Kraft Power Corp. v. Merrill, 981 N.E.2d 671, 683 (Mass. 2013). It follows that, because Massachusetts has folded the FTC Act into Chapter 93A, unfair or deceptive conduct that violates the FTC Act also violates Chapter 93A.

Having come this far, we turn to the next part of McDermott's argument, which is that per se liability arises through operation of the FDCPA. The FDCPA explicitly provides that a violation of its provisions "shall be deemed an unfair or deceptive act or practice in violation of" the FTC Act. 15 U.S.C. § 1692*l*(a).

At this point, it is helpful to recall our previous discussion of the alternative paths to per se Chapter 93A liability: the text of Chapter 93A itself, or the text of an independent statute. The FDCPA's language we just quoted is substantially similar to Mass. Gen. Laws ch. 142A's provision imposing per se Chapter 93A liability on home contractors for violations of Chapter 142A. In other words, just as Chapter 142A

-26-

does with respect to Chapter 93A, the FDCPA establishes that an unfair debt collection act in violation of the FDCPA is a per se violation of the FTC Act. And because Massachusetts has "wholly incorporated" the FTC Act and its interpretation into state consumer protection law, a violation of the FDCPA not only per se violates the FTC Act, it also constitutes a per se Chapter 93A violation.

To drive the point home, we will make one more comparison to state law. Although not cited by either party, Massachusetts has its own unfair debt collection statute, Mass. Gen. Laws ch. 93, § 49, which is entitled "Debt collection in an unfair, deceptive or unreasonable manner." The statute reads as follows:

> [n]o one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

Mass. Gen. Laws ch. 93, § 49. It goes on to list various actions that shall be "deemed unfair, deceptive or unreasonable." Id. Included is a prohibition against a debt collector "communicat[ing] directly with the alleged debtor after notification from an attorney representing such debtor that all further communications relative to the debt should be addressed to [that attorney]." Mass. Gen. Laws ch. 93, § 49(b). Finally, violations of the statute lead to Chapter 93A liability, as "[f]ailure to comply with

the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A." Mass. Gen. Laws ch. 93, § 49, cl. 7.

Here, the magistrate judge found that MEEB violated the FDCPA by, among other things, contacting McDermott despite its awareness that he was represented by counsel. Although McDermott has not advanced any claims under the state debt collection statute, it is clear that this particular FDCPA violation would have violated state debt collection law as well. And, by virtue of Chapter 93's clear language, it would have constituted an "unfair or deceptive act or practice" for Chapter 93A purposes.[15] That MEEB's direct contact of McDermott would have led to per se Chapter 93A liability under the state debt collection statute provides yet another reason for interpreting the similar language in the FTC Act and the FDCPA in the same way.

Summing up, and although our analysis differs markedly from the magistrate judge's, we conclude MEEB's violations of the FDCPA constitute per se Chapter 93A violations by virtue of the unambiguous statutory language in the FDCPA and the FTC Act. The

_____

[15] At first blush, Chapter 93 may not appear to provide for per se Chapter 93A liability because it does not address the trade or commerce requirement. Yet, Chapter 93 applies specifically to debt collectors. And a debt collector's business is, by definition, collecting debts. Although we need not decide the issue here, we would be hard-pressed to imagine why a debt collector who violates Chapter 93 would not be acting in trade or commerce with respect to the particular debtor.

SJC's <u>Klairmont</u> opinion does nothing to alter this reasoning, as <u>Klairmont</u> determined only that Attorney General regulations are bound by the scope of Chapter 93A. <u>Klairmont</u> simply did not address per se Chapter 93A liability arising through an independent statute. The magistrate judge, therefore, committed an error of law when she concluded that <u>Klairmont</u> required a separate "trade or commerce" finding in these circumstances. Accordingly, to the extent that the magistrate judge vacated the judgment in favor of McDermott on his Chapter 93A claim, we reverse.[16]

## B. Excessive, Redundant, or Otherwise Unnecessary Attorney's Fees in Violation of the FDCPA

McDermott next argues that the magistrate judge should have found that MEEB violated the FDCPA by charging and attempting to collect from him "excessive, redundant, or otherwise unnecessary attorney fees." Appellant Br. at 23. To get to this conclusion,

---

[16] Before moving on, we note MEEB's contention that because certain FDCPA violations found by the magistrate judge occurred outside of the FDCPA's one-year limitations period, these "untimely" claims can not serve as the basis for Chapter 93A liability. The Massachusetts appellate courts have unambiguously held that a Chapter 93A claim is subject to Chapter 93A's four-year limitations period. <u>See</u> <u>Fine</u> v. <u>Huygens, DiMella, Shaffer & Assocs.</u>, 783 N.E.2d 842, 849 (Mass. App. Ct. 2003) (A Chapter 93A claim "need only be dismissed if, under [Chapter] 93A's four-year limitations period and the accrual date applicable to the particular [Chapter] 93A claim, it was not timely filed."). We, too, recognized this more than twenty years ago. <u>See</u> <u>Tagliente</u> v. <u>Himmer</u>, 949 F.2d 1, 6 (1st Cir. 1991) (distinguishing between statute of limitations applicable to claim of fraudulent concealment and Chapter 93A claim based upon the same underlying conduct). MEEB does not argue that any of its FDCPA violations are untimely under Chapter 93A. Accordingly, its statute of limitations defense is without merit.

McDermott first cites several Massachusetts cases for the proposition that charging excessive fees violates Massachusetts law. Working from this premise, he directs our attention to language in the FDCPA which includes in its definition of unfair debt collection practices the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).[17]

After setting forth this basic position, McDermott argues MEEB was obligated to prove at trial that its fees were reasonable. McDermott says MEEB is unable to do so because it violated Mass. Gen. Laws ch. 183A, which McDermott contends required it to send pre-suit notices to McDermott's mortgagees. According to McDermott, these notices were intended to allow the mortgagee to make up the mortgagor's deficiency, and therefore avoid a lawsuit. Per McDermott, had MEEB sent out the notices as required, then his mortgagees would have paid the debt in order to avoid suit. Therefore, he urges us to find that MEEB's failure to send out pre-

---

[17] McDermott also argues that collection of excessive, redundant, and unnecessary fees "wrongfully cause[s] [a] debtor to incur avoidable costs" in violation of 15 U.S.C. § 1692f(5). Appellant Br. at 24. That section, however, renders it unlawful for a debt collector to "[c]aus[e] charges to be made to any person for communications by concealment of the true purpose of the communication." 15 U.S.C. § 1692f(5). McDermott makes no attempt to explain how this section applies to his avoidable costs theory. Accordingly, we do not consider it further.

-30-

suit notices resulted in MEEB filing unnecessary lawsuits and, by extension, charging him unnecessary fees.

MEEB makes several responses to these arguments. The only one with which we need concern ourselves is MEEB's position that McDermott is attempting to raise a new legal theory on appeal. MEEB says that McDermott's theory at trial was consistent with the allegations in his Verified Complaint that MEEB was responsible for causing an "unreasonable, unfair, unlawful, unexplained, and retroactive change in Pondview's policy for the specific purpose of precipitating a dispute with McDermott in order to generate legal fees for MEEB." Appellee Br. at 25. Having failed to make those allegations stick, MEEB says McDermott is now impermissibly "attempt[ing] to 'recast' his theory of liability solely under 15 U.S.C. § 1692f, previously having asserted that the alleged underlying conduct violated various other provisions of the FDCPA." Id. at 27.

Having reviewed the record, we agree with MEEB that McDermott's 15 U.S.C. § 1692f(1) excessive fees theory has been advanced for the first time on appeal. Following the six-day bench trial, the magistrate judge ordered each side to submit a post-trial brief of no more than 25 pages detailing their legal positions and requests for findings of fact and rulings of law. McDermott filed a 37-page brief, which included a footnote seeking to incorporate by reference all other legal arguments it raised

throughout the history of this case.  See Pl's Post-Trial Brief, Dist. Ct. Docket Entry 60 at 2.  In a docket order, the magistrate judge allowed the oversized brief, with the exception of that footnote.  See Dist. Ct. Docket Entry 62.  McDermott has not appealed this particular ruling, so we will concentrate only on the theories McDermott espoused in his post-trial brief.

From his opening line, McDermott took the position that he proved at trial that MEEB's "main objective" in its activities "was to run up its attorneys fees to Pondview, which Pondview then assessed to McDermott, and which MEEB then collected from McDermott's mortgagees in part."  Pl.'s Post-Trial Br. at 1.  He went on to reference 15 U.S.C. § 1692f(1), but that reference is in concert with 15 U.S.C. § 1692d, which prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  He then told the magistrate judge that MEEB violated these two statutes when

> it engaged in a convoluted collection procedure which inevitably caused miscommunication, lack of communication, confusion, and acrimony that escalated litigation costs and served as a pretext for MEEB to evade its obligation under 15 U.S.C. § 1692h to apply payments of McDermott's debt as he directed and not to debts he disputed . . . and for MEEB to provide McDermott with communications which were illegible, deceptive, and incomprehensible in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f.

-32-

Id. These arguments smack of Chapter 93A claims of unfair and deceptive conduct. Indeed, the title of each and every subsection in McDermott's post-trial brief referred to MEEB's "bad faith."

15 U.S.C. § 1692f(1), however, is aimed at something else entirely. The statute prohibits attempts to collect any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Although McDermott successfully asserted claims that MEEB violated other provisions of the FDCPA, nowhere in his post-trial brief does he take the position that the amount of his debts were not authorized by the condominium agreement.[18] Further, he did not even hint at the multi-step pathway to a § 1692f(1) violation that he advances in this appeal. Instead, following trial McDermott focused his arguments on MEEB's alleged bad faith and intentional violations of federal and state law.

In this Circuit, "it is a virtually ironclad rule that a party may not advance for the first time on appeal either a new argument or an old argument that depends on a new factual predicate." Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003); see also United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not

_____

[18] As the magistrate judge noted in addressing one of McDermott's other arguments, "[i]t is not abusive to collect or charge the costs of an ordinary collection action where, as here, the condominium documents gave Pondview the ability to charge those costs to [McDermott]." McDermott, 911 F. Supp. 2d at 77.

presented an argument to the district court, she may not unveil it in the court of appeals."). Our review of the record leaves us with no doubt that McDermott's 15 U.S.C. § 1692f(1) liability theory in this appeal was never raised to the magistrate judge. Accordingly, we will not consider it further.

## C. Multiple Damages for Willful or Intentional Conduct

McDermott next says the magistrate judge should have multiplied the damages award thanks to MEEB's knowing violations of Chapter 93A. Chapter 93A, § 9(3) requires a court to double or treble a plaintiff's damages if that court finds a defendant's violation of Chapter 93A was "a willing or knowing violation" of Chapter 93A, § 2.

To get here, McDermott argues that the magistrate judge committed an error of law when she found MEEB was not obligated under Mass. Gen. Laws ch. 183A to send pre-suit notices to McDermott's mortgagees. According to McDermott, had the magistrate judge gotten this legal ruling right, it would have provided a basis for finding that MEEB willfully or intentionally violated Chapter 93A since it was aware of his mortgagees' names and addresses, thereby bringing the damages multiplier into play. Separately, McDermott argues that the magistrate judge clearly erred when she considered the evidence and found MEEB's FDCPA violations (which resulted in per se Chapter 93A liability) were not in bad faith. The judge, he says, should have found MEEB

-34-

willfully violated Chapter 93A and awarded multiple damages for that reason.

MEEB urges us to affirm the magistrate judge's determination that it did not act in bad faith. MEEB first says the magistrate judge was correct when she determined that MEEB didn't have to send any pre-suit notices under Chapter 183A. Thus, Chapter 183A provides no basis for imposing multiple damages in MEEB's view. With respect to its purported bad faith, MEEB points out that the magistrate judge, in her initial decision, imposed per se Chapter 93A liability only, explicitly finding MEEB had not acted in bad faith or intentionally violated the law. This conclusion, MEEB asserts, was based on the evidence at trial and should not be uprooted on appeal.

We see no basis for reversal on this record.

**1.  Chapter 183A**

The interpretation of Chapter 183A's requirements presents a legal question, which we review de novo. The specific provision upon which McDermott relies, Chapter 183A, § 6(c) contains the following relevant language:

> When any portion of the unit owner's share of the common expenses has been delinquent for at least sixty days . . . the organization of unit owners shall send a notice stating the amount of the delinquency to the unit owner by certified and first class mail. The organization of unit owners shall also send a notice stating the amount of the delinquency to the fist mortgagee by certified and first class mail, provided, that the first mortgagee

> has informed the organization of unit owners
> of its name and mailing address.

Mass. Gen. Laws ch. 183A, § 6(c).

The key language in this passage is the clear statement establishing that the notice requirement is triggered only if "the first mortgagee has informed the organization of unit owners of its name and mailing address." Id. Per the unambiguous statutory language, such notice by the mortgagee essentially allows a mortgagee to "opt in" to the receipt of deficiency notices. While McDermott argues that the evidence shows MEEB was aware of his mortgagee's identity and address, there is no evidence in the record that any mortgagee ever "informed" MEEB of this information, which is required to bring the statute into play.

McDermott, without providing any convincing reason to do so, asks us to simply ignore this requirement and pick and choose to apply only that statutory language which benefits him. But where, as here, a Massachusetts "statute is unambiguous, our function is to enforce the statute according to its terms." Reading Co-Op. Bank v. Suffolk Constr. Co., Inc., 984 N.E.2d 776, 780 (Mass. 2013). We therefore decline McDermott's invitation to rewrite the statute to facilitate the outcome he desires.

Accordingly, we conclude from the plain language of the statute that the magistrate judge did not commit an error of law in finding that MEEB was not required to send pre-suit notices to any mortgagee that had not informed MEEB of its name and address.

-36-

McDermott may not rely on Chapter 183A in an attempt to demonstrate that MEEB acted in bad faith.

### 2. MEEB's alleged bad faith

McDermott is now left with his argument that the magistrate judge clearly erred when she found that MEEB did not intentionally violate Chapter 93A and that its actions were not motivated by bad faith, and again when she declined to award multiple damages. "Ultimately, [Chapter] 93A ties liability for multiple damages to the degree of the defendant's culpability." Kattar, 739 N.E.2d at 259. A reviewing court will only overturn a trial judge's finding in this regard if it was "clearly erroneous." Id. (citing Clegg v. Butler, 676 N.E.2d 1134, 1139 (Mass. 1997); see also Smith, 76 F.3d at 420 (Where a trial judge's finding as to "an actor's motivation" following a bench trial is "plausible, appellate review is at an end."). McDermott faces an uphill climb on this claim, and he is unable to reach the summit.

The magistrate judge had a front-row seat to each witness's testimony on direct and cross-examination over the course of the six-day bench trial. Her 203-page written decision summarized the testimony and set forth her credibility determinations.[19] She concluded MEEB did not conduct itself in such

---

[19] The magistrate judge made multiple findings in this regard. For example, she found McDermott's testimony about why he refused to pay certain assessments was "self serving" and "not credible," and that his testimony that he did not receive a letter MEEB sent to him by certified and first-class mail was "not credible" too.

a manner as to intentionally pump up its legal fees, and that it was instead motivated by its desire to zealously represent Pondview's interests. The magistrate judge further noted that in at least one instance, MEEB's incorrect statement about the amount owed by McDermott went in McDermott's favor (i.e., MEEB said he owed less than he really did), which supports her finding that MEEB was not simply trying to increase its legal fees.

At the end of the day, the magistrate judge found that MEEB acted in good faith, that it did not willfully or knowingly violate Chapter 93A, and that its "conduct was neither unfair nor deceptive." On this record, we are unable to say the magistrate judge's findings were clearly erroneous. And in the absence of intentional or bad faith violations of Chapter 93A, MEEB is not liable for double or treble damages.

## IV. CONCLUSION

In light of the foregoing, the magistrate judge's order with respect to MEEB's Rule 59(e) motion to reconsider and/or alter and amend the judgment is hereby **reversed** to the extent the magistrate judge determined MEEB is not liable under Chapter 93A. We therefore **remand** this matter to the magistrate judge with instructions to **reinstate** the original judgment in McDermott's favor on his Chapter 93A count. The magistrate judge's resolution

---

The magistrate judge later commented that McDermott's "demeanor . . . markedly changed on cross examination."

of the parties' Rule 59(e) motions is **affirmed** in all other respects.  The parties shall bear their own costs.